STATE of Wisconsin, Plaintiff-Appellant,

v.

Vito George AMBROSIA, Defendant-Respondent.

Court of Appeals

*No. 95–3393–CR. Submitted on briefs September 16, 1996.—Decided January 15, 1997.*

(Also reported in 560 N.W.2d 555.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *James E. Doyle*, attorney general, and *Gregory M. Posner-Weber*, assistant attorney general.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Terry Evan Williams* of *Williams Law Offices* of Delavan.

Before Snyder, P.J., Brown and Nettesheim, JJ.

SNYDER, P.J. The State appeals from an order suppressing portions of Vito George Ambrosia's statement to a sheriff's deputy after his arrest.[1] The State concedes that an incriminating statement made by Ambrosia prior to the administration of his *Miranda* warnings must be suppressed. *See Miranda v. Arizona*, 384 U.S. 436 (1966). However, the State argues that a later statement, made post-*Miranda*, should be admissible. The trial court ruled portions of the later statement to be admissible, but excluded certain parts, reasoning that because the information contained in those parts related to the same subject matter as that contained in Ambrosia's suppressed statement, it was not admissible.

We affirm the trial court's ruling to the extent that the post-*Miranda* statement refers back to the prior interrogation. However, we conclude that the rest of the voluntary statement made by Ambrosia after receiving the *Miranda* warnings is admissible. Therefore, we affirm in part, reverse in part and remand the cause for further proceedings.

The Walworth County Sheriff's Department executed a search warrant for property owned by Ambrosia. The warrant affidavit alleged that Ambrosia had sold one ounce of marijuana to Julie Hernandez at that location. Upon their arrival at the property, officers found Ambrosia standing outside the residence. He was handcuffed, searched and then taken inside and seated in the living room. An officer remained with him.

---

[1] The State brings this appeal from the trial court's nonfinal order pursuant to § 974.05(1)(d), STATS.

Approximately five to ten minutes later, Deputy Timothy Otterbacher came in and introduced himself to Ambrosia. He asked Ambrosia if he knew why the officers were there and characterized Ambrosia's reply as they were "probably there because he sold marijuana to Julie Hernandez or words to that effect." Otterbacher then told Ambrosia that he would like to talk to him, removed his handcuffs and read Ambrosia his *Miranda* rights. Ambrosia responded that he understood his rights and that he was willing to answer the deputy's questions and would make a statement. Otterbacher then spoke with Ambrosia for fifteen or twenty minutes and subsequently asked Ambrosia to make a tape-recorded statement. Ambrosia agreed; in the statement he implicated himself and others in the sale and possession of marijuana.

Counsel for Ambrosia moved to suppress the post-*Miranda* statement, claiming that the second statement was tainted by the coercive nature of the original confession. Counsel also argued that the second statement was excludable as "fruit of the poisonous tree." *See Wong Sun v. United States*, 371 U.S. 471 (1963). The trial court agreed that "[a]ny reference, therefore, to the statement made pre-Miranda and the references to the pre-Miranda statement in the subsequent transcribed statement will be suppressed." The State now appeals.

The issue presented is a question of law and as such is decided without deference to the trial court. *See State v. Arroyo*, 166 Wis. 2d 74, 79, 479 N.W.2d 549, 551 (Ct. App. 1991). The review of constitutional principles as applied to established facts is de novo. *See State v. Turner*, 136 Wis. 2d 333, 344, 401 N.W.2d 827,

832 (1987). A reviewing court is duty bound to "apply constitutional principles to the facts as found in order to ensure that the scope of constitutional protections does not vary from case to case." *Id.*

Here, the State concedes that Ambrosia's initial statement in response to Otterbacher's questioning was pre-*Miranda* and therefore inadmissible. The issue is whether Ambrosia's subsequent statement, obtained after he had been given the *Miranda* warnings, is admissible.

The State contends that the trial court erred when it suppressed much of Ambrosia's later statement. The State argues that *Oregon v. Elstad*, 470 U.S. 298 (1985), allows it to use Ambrosia's post-*Miranda* statement even though the police had obtained an earlier unwarned statement from Ambrosia.

█

Before a custodial interrogation, the Supreme Court requires the police to administer *Miranda* warnings. These warnings protect an individual's Fifth Amendment right against self-incrimination. *See Miranda*, 384 U.S. at 444. Unless *Miranda* warnings have been given, a statement obtained from a defendant during a custodial interrogation must be suppressed during the prosecution's case-in-chief. *See Elstad*, 470 U.S. at 306-07.

█

However, under *Elstad*, "a suspect who has once responded to unwarned yet uncoercive questioning is not thereby disabled from waiving his rights and confessing after he has been given the requisite *Miranda* warnings." *Elstad*, 470 U.S. at 318. A subsequent statement made after police administer *Miranda* warnings is not tainted. In *Elstad*, 470 U.S. at 314, the Court reasoned that:

> [a] subsequent administration of Miranda warnings to a suspect who has given a voluntary but unwarned statement ordinarily should suffice to remove the conditions that precluded admission of the earlier statement. In such circumstances, the finder of fact may reasonably conclude that the suspect made a rational and intelligent ·choice whether to waive or invoke his rights.

Subsequent statements made after the police administer *Miranda* warnings are admissible if the suspect knowingly and voluntarily waives his or her *Miranda* rights. *See Elstad*, 470 U.S. at 314. Only in involuntary situations are the subsequent statements made after the police administer *Miranda* rights found inadmissible under the exclusionary rule. *See Colorado v. Connelly*, 479 U.S. 157, 167 (1986).

The ultimate issue of voluntariness "is an issue of law, and the appellate court must make an independent determination." *United States v. Kreczmer,* 636 F.2d 108, 110 (5th Cir. 1981). A statement is involuntary only if the police obtain it through means such as threats of violence, psychological ploys or other coercive means. *See Elstad,* 470 U.S. at 313-14. Absent deliberately coercive tactics in obtaining Ambrosia's original statement, "the mere fact that a suspect has made an unwarned admission does not warrant a presumption of compulsion." *See id.* at 314.

While defense counsel makes much of the circumstances of Ambrosia's arrest, stating that he was "ordered to the ground, arrested and was in handcuffs . . . [and] threaten[ed] with naked firearms," Ambrosia was not questioned until five to ten minutes

after police entered with the search warrant. Additionally, there was only one officer present and Ambrosia was questioned while sitting in his own living room. The trial court explicitly found:

> I am not finding that the police made any threats or that they coerced him or that they beat him up or put a gun to his head or anything like that. I am stating that when he was under arrest and in custody, he was not given his Miranda warning.

Our independent review of the record convinces us that Ambrosia's pre-*Miranda* statement was not coerced in any way. Since Ambrosia's original statement was voluntary, his post-*Miranda* statement is admissible under *Elstad.*

■

Having concluded that Ambrosia's post-*Miranda* statement was voluntary and thus admissible on that basis, we must yet consider whether any portion of the statement should be suppressed because it is tainted by Ambrosia's earlier statement. A statement is tainted if the police exploit an earlier illegality to obtain later evidence or statements. *See Wong Sun*, 371 U.S. at 488. The question is " 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' " *Id.* (quoted source omitted). In the instant case, the issue is whether the police specifically used or exploited Ambrosia's earlier pre-*Miranda* statement in obtaining his later statement.

The trial court concluded at the suppression hearing that all statements that referred either directly or indirectly to Ambrosia's pre-*Miranda*

statement should be suppressed. More specifically, the court suppressed more than three pages of his transcribed statement. The trial court sought to eliminate any information offered by Ambrosia that was repetitious of his pre-*Miranda* statement, reasoning that a finding that those portions of the statement were admissible "violated the spirit of *Miranda*."

While we concur with the trial court's concern that those portions of the post-*Miranda* statement tainted by the earlier statement must be suppressed, we disagree with the breadth of the trial court's suppression order. *Elstad* instructs us that only information which specifically refers back to the pre-*Miranda* questioning should be suppressed, not those responses which are only indirectly related to the original questioning. Much of what the trial court suppressed did not specifically reference the original pre-*Miranda* interrogation.

During the initial interrogation, Otterbacher asked Ambrosia if he knew why the police were at his residence. Ambrosia answered that it was because of the drugs he sold Hernandez. After Otterbacher gave Ambrosia the *Miranda* warnings, the following exchange took place:

OTTERBACHER: [W]hen I first talked to you I asked you if you knew why we were here serving a search warrant. You told me that you did know why, is that correct?

AMBROSIA: Yes.

OTTERBACHER: And what did you tell me?

AMBROSIA: Cause of Julie.

In the above exchange, Otterbacher's questions specifically refer to information obtained during the inadmissible questioning of Ambrosia.[2] Admitting this information violates the spirit of *Miranda*. If allowed in, it would put before the jury evidence which has already been correctly suppressed.

██

We conclude, however, that only the statements outlined above specifically refer back to the pre-*Miranda* statement and are inadmissible.[3] The rest of Ambrosia's post-*Miranda* statement is admissible under *Elstad* as it was a voluntary statement and followed the administration of *Miranda* warnings. We affirm the trial court's order suppressing Ambrosia's pre-*Miranda* statement. We also affirm the suppression of that portion of Ambrosia's later statement in which Otterbacher's questions referenced the information obtained pre-*Miranda*. We conclude, however, that the rest of Ambrosia's taped statement is admissible and remand the cause for further proceedings consistent with this opinion.

---

[2] The above exchange, lines 7 through 11 of page 2 of the taped interview, should be suppressed as it specifically refers back to the initial *Miranda*-defective questioning.

[3] Ambrosia also argues that the second statement should be suppressed under *Wentela v. State,* 95 Wis. 2d 283, 299-300, 290 N.W.2d 312, 319-20 (1980). However, our supreme court has recently stated that *Wentela* cannot be relied upon as controlling and that it provides "very little guidance today" in light of *Oregon v. Elstad,* 470 U.S. 298 (1985), and other cases decided subsequent to *Wentela. See State v. Harris,* 199 Wis. 2d 227, 250 n.16, 544 N.W.2d 545, 554 (1996).

*By the Court.*—Order affirmed in part; reversed in part and cause remanded.