STATE of Wisconsin, Plaintiff-Respondent,

v.

Scott KIEKHEFER, Defendant-Appellant.

Court of Appeals

*No. 96–2052–CR. Oral argument May 29, 1997.—Decided July 23, 1997.*

(Also reported in 569 N.W.2d 316.)

461

On behalf of the defendant-appellant, the cause was submitted on the briefs and oral argument of *Linda Hornik* of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the briefs of *James E. Doyle*, Attorney General, and *Gregory M. Posner-Weber*, Assistant Attorney General. Oral argument was by *Gregory M. Posner-Weber*.

Before Brown, Nettesheim and Anderson, JJ.

ANDERSON, J. Scott Kiekhefer appeals from a judgment of conviction for possession of THC (marijuana) with intent to deliver in violation of § 161.41(1m)(h), STATS., 1993–94. Judgment was entered after Kiekhefer pled no contest. On appeal, Kiekhefer maintains that the trial court erred when it

denied his motion to suppress statements made to the police prior to receiving his *Miranda*[1] warnings, the physical evidence obtained therefrom and his subsequent written statement. We hold, and the State concedes, that Kiekhefer's unwarned statements must be suppressed. We further conclude that those unwarned statements were not voluntarily made, and consequently, the physical evidence derived from those statements must be suppressed. Finally, because the subsequent written statement was not so attenuated from the prior illegal police activity as to dissipate the taint, it must also be suppressed. We therefore reverse the judgment of conviction and remand for further proceedings consistent with this opinion.

### BACKGROUND

According to the testimony of the agents, they received information that Kiekhefer might be holding a large amount of marijuana and some guns for Darryl Wisneski.[2] The word was that Wisneski might attempt to move the dope because he suspected that Kiekhefer's home was going to be raided. Surveillance was set up at Kiekhefer's home to watch for Wisneski. On March 6, 1995, one of Wisneski's vehicles pulled into the area of Kiekhefer's home and a person matching Wisneski's description entered the house. When Wisneski left the house the agents pursued him, but he eluded them.

At that point, the agents decided that they would try to do a consensual search of the Kiekhefer home. According to deputy Brian Londre, he and agent Joseph Zbleskwski knocked on the door and Shirley

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[2] Kiekhefer refers to Darryl Wisneski as Darryl Vesnefsky. Because the facts are largely taken from the officers' testimony, we will utilize Wisneski when referring to Darryl.

Kiekhefer, Kiekhefer's mother, allowed them into the kitchen. The two agents never asked Shirley for consent to search her house, but she agreed to let them speak to Kiekhefer if she could come along. They walked through a kitchen door to a work area which contained the bedroom door to Kiekhefer's room. The door was closed.

Londre and Zbleskwski smelled the odor of burning marijuana, so they called for the other two agents to secure the residence. Zbleskwski testified that they wanted to secure the residence because they believed they had probable cause to secure a warrant.

After a brief discussion and without announcing, the four agents opened the door to Kiekhefer's room and walked in. Kiekhefer's friend Keith Christensen was present; the agents immediately handcuffed and patted down both individuals. Prior to any discussion of consent to search, Zbleskwski asked if there were any controlled substances in the room. Kiekhefer gestured to a joint in the ashtray. Zbleskwski asked if there was more; Kiekhefer initially said no, but then stated there was a bag of marijuana in his dresser.

Zbleskwski next asked for permission to search the remainder of the room. He "may have" said "we can do this the hard way or we can do this the easy way." He did tell Kiekhefer "we can get a warrant if we need to." Christensen testified that Sergeant Carlson said there were a couple of ways they could go about it: "We can do this easy, you can allow me to or we can do this hard, and then in which case we'll tear this place apart." According to Christensen, Carlson made a point to say it would be easier if Kiekhefer cooperated, but if they got a search warrant, then they would search and tear up the entire house.

Consequently, at 6:25 p.m., Kiekhefer gave them permission to search. After that, Zbleskwski asked if there was any other marijuana in the room. Kiekhefer disclosed the location of a gym bag in the closet which contained fourteen pounds of marijuana. The agents then searched the room and uncovered an unloaded assault rifle and another unloaded gun, both packaged in styrofoam.

After Kiekhefer disclosed the whereabouts of the marijuana and the agents searched his room, Zbleskwski read him the *Miranda* warnings at 6:30 p.m. Initially, Kiekhefer did not wish to speak to the agents. Approximately two hours later, he changed his mind, the warnings were reread and at that point Kiekhefer gave a written statement.

Subsequently, Kiekhefer was charged, as a party to the crime, with one count of possession of a controlled substance, in an amount greater than 2500 grams, contrary to §§ 161.41(1m)(h)3, 161.14(4)(t) and 939.05, STATS., 1993–94; and two counts of possession of drug paraphernalia contrary to § 161.573, STATS., 1993–94. Kiekhefer waived the preliminary hearing and was bound over for trial.

Kiekhefer filed a motion to suppress all evidence seized from the Kiekhefers' residence, as well as his statements made during the search. Kiekhefer's motion was subsequently denied. Thereafter, on October 31, 1995, Kiekhefer entered a plea of no contest to possession of a controlled substance, and the two counts for possession of drug paraphernalia were dismissed. Kiekhefer received a three-year prison sentence, was ordered to obtain drug and alcohol assessment and counseling, was fined $1000 and his driver's license was revoked for six months. Kiekhefer appeals.

467

## DISCUSSION

### *Miranda Violation*

We will address the *Miranda* violation first. Upon entering the bedroom, the agents handcuffed Kiekhefer and Christensen and immediately began questioning Kiekhefer about the location of any controlled substances in the room. The interrogation occurred prior to any discussion of consent to search and before Kiekhefer and Christensen received *Miranda* warnings. Only after the agents had recovered all of the marijuana and had searched the room (uncovering two weapons) did they read Kiekhefer the *Miranda* warnings. Zbleskwski testified that the warnings were given approximately fifteen minutes after they entered the room; two hours later, Kiekhefer gave a written statement. Kiekhefer argues for suppression of all of this evidence under the Fifth Amendment.

The State concedes suppression of Kiekhefer's unwarned *statements* based on the *Miranda* violation. The State nevertheless maintains that under *Oregon v. Elstad*, 470 U.S. 298 (1985), the *Miranda* exclusionary rule does not apply to physical evidence proximately derived from an unwarned, yet voluntary, statement. Although *Elstad* dealt with subsequent statements obtained after administering *Miranda* warnings, the State asks this court to take *Elstad* one step further to allow for the admission of the physical evidence as well. This is an issue of first impression in Wisconsin;[3] how-

---

[3] The courts have not had the opportunity to squarely address the admissibility of physical evidence derived from a *Miranda* violation. In *State v. Harris*, 199 Wis. 2d 227, 248–49, 544 N.W.2d 545, 553–54 (1996), the supreme court determined that physical evidence derived from a violation of the bright-line rule in *Edwards v. Arizona*, 451 U.S. 477 (1981), which bars all

ever, the facts of this case compel us to decline the State's invitation.

*Miranda* presumes that an interrogation in certain custodial circumstances is inherently coercive and that statements made under those conditions are inadmissible unless the suspect is administered his or her *Miranda* rights and freely decides to forego those rights. *See Elstad*, 470 U.S. at 305 (citing *New York v. Quarles*, 467 U.S. 649, 654 (1984)). The failure to provide *Miranda* warnings creates a "bright-line, legal presumption of coercion, requiring suppression of all unwarned statements." *Elstad*, 470 U.S. at 306 n.1. Nevertheless, "[i]t is an unwarranted extension of Miranda to hold that a simple failure to administer the warnings, unaccompanied by any actual coercion or other circumstances calculated to undermine the suspect's ability to exercise his free will, so taints the investigatory process that a subsequent voluntary and informed waiver is ineffective for some indeterminate period."[4] *Elstad*, 470 U.S. at 309. "Though Miranda

uncounseled police-initiated interrogation after invocation of the right to counsel, must be suppressed. In both *State v. Ambrosia*, 208 Wis. 2d 269, 276, 560 N.W.2d 555, 558 (Ct. App. 1997), and *State v. Kieffer*, 207 Wis. 2d 464, 474–75, 558 N.W.2d 664, 669 (Ct. App. 1996), this court concluded that because the defendants' original statements were voluntary, the post-*Miranda* statements were also admissible under *Oregon v. Elstad*, 470 U.S. 298 (1985). The United States Supreme Court has not answered the question in *Harris*, nor has it reached the question of the admissibility of physical evidence derived from a *Miranda* violation. *See Harris*, 199 Wis. 2d at 236–37 n.5, 544 N.W.2d at 548–49.

[4] The *Elstad* Court also relied on *Michigan v. Tucker*, 417 U.S. 433 (1974). There the Court was asked "to extend the Wong Sun, [371 U.S. 471 (1963)] fruits doctrine to suppress the testimony of a witness for the prosecution whose identity was

requires that the unwarned admission must be suppressed, the admissibility of any subsequent statement should turn . . . solely on whether it is knowingly and voluntarily made." *Id.*

The first step in the *Elstad* analysis requires the reviewing court to " 'determine whether the statement made by a defendant before the *Miranda* warning was actually coerced in violation of the fifth amendment.' " *United States v. Gonzalez-Sandoval*, 894 F.2d 1043, 1049 (9th Cir. 1990) (quoted source omitted). This inquiry is critical because where there is no evidence of coercion, "the object of the fifth amendment—assuming trustworthiness of evidence introduced at trial—is not served by barring admission of the derivatively obtained evidence or statements." *Id.* at 1048. If the court finds that the statement was voluntary, despite having been obtained in technical violation of *Miranda*, it then " 'should suppress the statement given after the *Miranda* warning only if it finds that the subsequent statement was not voluntarily made.' " *Gonzalez-Sandoval*, 894 F.2d at 1049 (quoted source omitted).

In determining whether a statement (confession) was voluntary, courts must independently examine the record and apply the totality of circumstances test. *See Arizona v. Fulminante*, 499 U.S. 279, 286–87 (1991).

---

discovered as the result of a statement taken from the accused without benefit of full Miranda warnings." *Elstad*, 470 U.S. at 308. Because the breach of *Miranda* procedures in *Tucker* did not involve actual compulsion, the Court concluded that the unwarned questioning did not abridge the defendant's constitutional privilege; it merely departed from the "prophylactic standards" of *Miranda. See id.* Where there is no violation of core constitutional rights, the *Wong Sun* doctrine does not apply. *See id.*

"In examining all the surrounding circumstances to determine if in fact the consent to search was coerced, account must be taken of subtly coercive police questions, as well as the possible vulnerable subjective state of the person who consents." *Schneckloth v. Bustamonte*, 412 U.S. 218, 229 (1973). Circumstances the court should consider are the consenting party's age, intelligence, education, experience and knowledge of the right to withhold consent, as well as evidence of inherently coercive tactics, either in the nature of police questioning or in the environment in which the questioning took place. *See id.* at 226–27. The following facts weigh against a determination of voluntariness: (1) the defendant was in custody; (2) the arresting officers overmastered the suspect; (3) *Miranda* warnings were not given prior to the search; (4) the defendant was not told he had a right to withhold his consent to be searched; or (5) the officers claimed they could obtain a search warrant. *See United States v. Kim*, 25 F.3d 1426, 1432 (9th Cir. 1994).

We conclude that Kiekhefer's statements and purported consent were not the product of a free and unconstrained choice. Although Kiekhefer's age, intelligence and education favor admission, these factors are far outweighed by the nature and environment of the police questioning.

First, the agents made a sobering show of force. Kiekhefer was immediately handcuffed and interrogated by four agents who had only minutes before entered his room both unannounced and uninvited. Despite being in custody, Kiekhefer was not provided *Miranda* warnings. His statements as to the location of the marijuana were extracted without *Miranda* warnings and after entry was gained without a warrant.

Opening a door does not mean that government officials can go in and search, which is precisely what occurred here, even if it is coined "securing the room." *See Lo-Ji Sales, Inc. v. New York,* 442 U.S. 319, 329 (1979) (bookstore owner had legitimate expectation of privacy against governmental intrusion and warrantless search). All of these facts contributed to the coercive atmosphere in which Kiekhefer's consent was received.

Equally important to the voluntariness analysis is the fact that Kiekhefer was not informed of his right to withhold consent to search, particularly after the agents had searched "the area that he was in." *See Schneckloth,* 412 U.S. at 248–49 (subject's knowledge of a right to refuse is a factor to be taken into account). The fact that Kiekhefer initially refused to consent to a search of his room also militates against a finding of voluntariness. *See United States v. Pulvano,* 629 F.2d 1151, 1157 (5th Cir. 1980) (prior refusal is a factor to be considered, but not determinative).

Finally, the agents postured about obtaining or seeking a search warrant if Kiekhefer would not consent to a search. The agents' testimony differs on this point. Zbleskwski testified that he told Kiekhefer "if he would not give us permission, we were going to apply for a search warrant." According to Londre, Zbleskwski stated, "[W]e can get a warrant if we need to." Christensen's uncontroverted testimony was that Carlson said there were a couple of ways they could go about it: "We can do this easy, you can allow me to or we can do this hard, and then in which case we'll tear this place apart."[5] Carlson also explained that they could get a

---

[5] Carlson never testified at the suppression hearing. Therefore, Christensen's testimony is uncontroverted. *See United States v. Talkington,* 843 F.2d 1041, 1044 n.2 (7th Cir. 1988).

search warrant but that would take about two hours and they would have to keep control of the house until that occurred. Zbleskwski agreed it was possible that Carlson said something like "given all the observations that I have made here, I think there's probable cause and we can obtain a search warrant."

"Police may not threaten to obtain a search warrant when there are no grounds for a valid warrant, but '[w]hen the expressed intention to obtain a warrant is genuine . . . and not merely a pretext to induce submission, it does not vitiate consent.'" *United States v. Evans*, 27 F.3d 1219, 1231 (7th Cir. 1994) (quoted source omitted). Arguably the agents had probable cause for a search warrant. At the time of Carlson's statements, he had confiscated Kiekhefer's marijuana cigarette and the baggie contained in the dresser drawer. (Ignoring, of course, the fact that whatever cause they gained at the scene was tainted by their warrantless entry.)

Nevertheless, the agents had no right to imply that they could sit in Kiekhefer's home for two hours while a warrant was obtained. The agents did not have a valid warrant permitting them to be in Kiekhefer's home and they had no right to remain in the home, absent a valid warrant, especially if consent was revoked. *See United States v. Kelly*, 913 F.2d 261, 265–66 (6th Cir. 1990) (consent terminated when previous consent revoked). It was simply a misrepresentation to imply that they could remain in Kiekhefer's home, keeping him in custody, while a warrant was obtained. *See* 3 WAYNE R. LAFAVE, SEARCH AND SEIZURE § 8.2(c) at 654–55 (3rd ed. 1988). Clearly, Carlson intended to lead Kiekhefer to believe that resistance was futile and that he had lawful authority to search Kiekhefer's home or room, with or without Kiekhefer's consent.

473

Based on these circumstances, considered in their totality, we hold that Kiekhefer's statements and subsequent consent were obtained in a coercive manner and were not freely and voluntarily given. Accordingly, the physical evidence derived from those statements and the consent to search must be suppressed.

Because we conclude that the prior unwarned statements (and consent to search) were not voluntarily made, we must next examine "the time that passes between the confessions, the change in place of interrogations, and the change in identity of the interrogators" to decide whether that coercion carried over into the second warned confession. *See Elstad*, 470 U.S. at 310. We conclude that Kiekhefer's warned, written statement was not voluntarily given either.

First, the time between the initial unwarned statements and the subsequent written statement was approximately two hours without a break. In addition, both interrogations took place in Kiekhefer's room—in the same compelling surroundings. Finally, both interrogations were conducted by Zbleskwski and Carlson with the other two agents present. Under these circumstances, we cannot conclude that Kiekhefer knowingly and intelligently waived his right to remain silent prior to the time he made his subsequent statement. Accordingly, the written statement is inadmissible.

### Warrantless Entry and Subsequent Search

Even without the Fifth Amendment violation, the evidence must nevertheless be suppressed because of the agents' warrantless entry and subsequent search and seizure conducted in violation of the Fourth Amendment and Article I, § 11 of the Wisconsin Consti-

tution. Kiekhefer argues that the agents did not have consent to enter without a warrant. This presents a question of constitutional fact and as such is decided without deference to the trial court. *See State v. Phillips*, 209 Wis. 2d 559, 567, 563 N.W.2d 573, 575 (Ct. App. 1997). We are bound by the trial court's findings of historical or evidentiary facts unless they are clearly erroneous. *See State v. Turner*, 136 Wis. 2d 333, 343–44, 401 N.W.2d 827, 832 (1987).

A warrantless entry into the home in order to conduct a search, seizure or arrest, absent a showing of exigent circumstances or consent, violates a person's Fourth Amendment right against unlawful searches and seizures. *See State v. Smith*, 131 Wis. 2d 220, 226–27, 388 N.W.2d 601, 604 (1986). Here, the trial court found that the entry into the bedroom was made with consent and was therefore lawful. However, according to the agents' testimony, neither of them asked for permission to search the Kiekhefer home or Kiekhefer's room. Consent must be knowledgeably and voluntarily given. *See Schneckloth*, 412 U.S. at 222. That which is not asked for cannot be knowingly or voluntarily given. The trial court's finding is clearly erroneous.

In fact, the State concedes that the agents did not have consent to enter Kiekhefer's room. Instead, the State maintains that exigent circumstances justified the warrantless entry into Kiekhefer's room. Although exigent circumstances were not argued before the trial court, on appeal, the respondent is not barred from asserting any valid grounds to affirm the lower court's ruling. *See State v. Holt*, 128 Wis. 2d 110, 123–26, 382 N.W.2d 679, 685–87 (Ct. App. 1985). However, *Holt* is not to be applied in a case where further fact finding on

the underlying question is necessary to a resolution of the issue. *See State v. Milashoski*, 159 Wis. 2d 99, 109, 464 N.W.2d 21, 25 (Ct. App. 1990), *aff'd,* 163 Wis. 2d 72, 471 N.W.2d 42 (1991). Accordingly, we examine the State's exigent circumstances argument on the record before us.

The exigent circumstances inquiry is limited to the objective facts reasonably known to, or discoverable by, the officers at the time of the entry. *See Illinois v. Rodriguez*, 497 U.S. 177, 186 (1990). Our supreme court has identified four circumstances in which a warrantless entry of a private residence may pass constitutional muster: "(1) an arrest made in 'hot pursuit,' (2) a threat to safety of a suspect or others, (3) a risk that evidence will be destroyed, and (4) a likelihood that the suspect will flee." *State v. Kiper*, 193 Wis. 2d 69, 90, 532 N.W.2d 698, 708 (1995) (citation omitted). The government bears the burden of establishing that exigent circumstances existed. *See id.* at 93, 532 N.W.2d at 709. However, the government cannot justify a search on the basis of exigent circumstances that are of the law enforcement officers' own making. *See United States v. Johnson*, 12 F.3d 760, 764 (8th Cir. 1993).

The State addresses two theories of exigent circumstances. First, the State argues that the officers could determine that if they withdrew from the area, "either Kiekhefer would destroy the marijuana or Wisneski would return to reclaim his stash." Second, the State advances the argument that "the officers on scene could reasonably infer that the room was the situs of drug activity, that the occupants of the room would be armed, and that they would attempt to use

their weapons against the officers if given the opportunity to do so." We disagree.

Addressing the safety consideration first, it must be noted that neither of the agents testified that at any time prior to or after entering the room did they harbor beliefs that exigent circumstances existed. Furthermore, any purported concerns for safety were unreasonable given the circumstances that confronted these agents. Although the agents had been informed that Kiekhefer was possibly holding firearms for Wisneski, they did not know whether they were in the room or whether they were loaded. "The mere presence of firearms does not create exigent circumstances." *United States v. Johnson*, 22 F.3d 674, 680 (6th Cir. 1994). Moreover, there is no indication that Kiekhefer was considered dangerous. *See United States v. Killebrew*, 560 F.2d 729, 733–34 (6th Cir. 1977) (where there were no facts indicating that an occupant was dangerous or about to escape, a warrantless entry violated the Fourth Amendment, even though the police knew the occupant possessed a gun).

In addition, the record demonstrates that the agents had the situation well in hand. During surveillance of Kiekhefer's home, two agents went to the residence to get permission to search while two remained outside. Ultimately, all four agents congregated outside of Kiekhefer's door to discuss their plan of attack. There is no indication that Kiekhefer was aware of their presence; rather, he was talking on the phone when they entered. Based on the odor of marijuana, the agents believed they had probable cause for a search warrant, but after consultation "it was decided that [they] would enter the room and secure it." Here, the agents' conduct—an unannounced warrantless entry—created any potential danger, and the exigent

circumstances resulting from that conduct cannot justify the warrantless entry. *See Johnson,* 12 F.3d at 764; *see also United States v. Templeman,* 938 F.2d 122, 124 (8th Cir. 1991) (no exigent circumstances where officers had the defendant's trailer home under surveillance, so that it was unlikely that the defendant would escape); *United States v. Duchi,* 906 F.2d 1278, 1284 (8th Cir. 1990) (although the appearance of officers may precipitate an urgent situation, that presence does not qualify as an exigency justifying an immediate entry or arrest). The record here reveals no safety exigency sufficient to justify the warrantless entry of Kiekhefer's room.

As to the destruction of evidence argument, this is also unsupported by the record. "In determining whether the agents reasonably feared imminent destruction of the evidence, the appropriate inquiry is whether the facts, as they appeared at the moment of entry, would lead a reasonable, experienced agent to believe that evidence might be destroyed before a warrant could be secured." *United States v. Rivera,* 825 F.2d 152, 156 (7th Cir. 1987). In this case, any reasonable evaluation of the situation should have indicated to experienced officers that immediate action was not required.

According to Londre, they believed Kiekhefer was in possession of a large amount of marijuana. However, the presence of contraband without more does not give rise to exigent circumstances. *See United States v. Rodgers,* 924 F.2d 219, 222 (11th Cir. 1991). In addition, a large quantity of marijuana, unlike other contraband, could not be easily or quickly destroyed in Kiekhefer's bedroom. When police know that the drugs being searched for are of a type or in a location that makes them impossible to destroy quickly, "the asserted gov-

ernmental interests in preserving evidence and maintaining safety may not outweigh the individual privacy interests intruded upon a no-knock entry." *Richards v. Wisconsin,* — U.S. —, 117 S. Ct. 1416, 1421 (1997). The scales tip even less in favor of the governmental interests in an unannounced warrantless entry.

Moreover, the agents were not confronted with the sounds of destruction emanating from within Kiekhefer's room so as to excuse the warrantless entry. *See, e.g., United States v. Frierson,* 299 F.2d 763, 766 (7th Cir. 1962) (exigency exists where officers heard "get rid of the stuff"). In fact, the agents took the time to discuss obtaining a search warrant, but decided to simply enter the room.

Although the agents smelled an odor of burning marijuana, this does not justify the warrantless entry either. Rather, the agents had probable cause to secure a search warrant, but they had no right to make a warrantless entry into Kiekhefer's room. *See Johnson v. United States,* 333 U.S. 10, 13 (1948); *see also State v. Brockman,* 231 Wis. 634, 641, 283 N.W. 338, 342 (1939). In this case, the agents' warrantless entry into Kiekhefer's room was not justified by exigent circumstances founded on fear of destruction of evidence.

Finally, the record simply does not support the suggestion that Wisneski might return to reclaim the stash. Keeping in mind that Wisneski just narrowly escaped the agents' surveillance and pursuit, reasonable officers would not expect him to return to Kiekhefer's home anytime soon. Clearly, these agents did not believe Wisneski was returning; otherwise, their consensual search of the home would have been unnecessary. Moreover, if Wisneski did return, the

agents could simply have apprehended him for questioning. In sum, neither of the exceptions to a warrantless entry into a home was satisfied in this case in violation of Kiekhefer's Fourth Amendment right against unlawful searches and seizures.[6]

Our inquiry does not end here, however. Because the agents' entry constituted a violation of Kiekhefer's Fourth Amendment protections, the question remains whether all of the seized evidence should be suppressed utilizing the attenuation doctrine articulated in *Wong Sun v. United States*, 371 U.S. 471, 488 (1963). This is also a question of constitutional fact that we review independently of the trial court. *See State v. Anderson*, 165 Wis. 2d 441, 447, 477 N.W.2d 277, 280 (1991).

After the agents entered Kiekhefer's room, they handcuffed him and Christensen and immediately began questioning Kiekhefer about the location of any controlled substances in the room. Kiekhefer eventually disclosed three locations where marijuana could be found, two before he signed a consent to search form and one after. The agents also uncovered two weapons.

*Wong Sun* not only requires that the statement meet the Fifth Amendment standard of voluntariness, but it must also be " 'sufficiently an act of free will to purge the primary taint.' "[7] *See Phillips*, 209 Wis. 2d at 568, 563 N.W.2d at 576 (quoted source omitted). The concern in attenuation cases is whether the connection between the illegal police activity and a later state-

---

[6] The State has not asserted, and this court cannot find, that the remaining categories of exigent circumstances, the "hot pursuit" and "fleeing suspect" exceptions, apply here.

[7] We applied the Fifth Amendment standard of voluntariness to Kiekhefer's statements in the previous section. That discussion is equally applicable here. Kiekhefer's unwarned statements were not freely and voluntarily made.

ment has " 'become so attenuated as to dissipate the taint.' " *See id.* (quoted source omitted). If a defendant's statement and consent to search were obtained by exploitation of prior illegal police activity, then any statements and evidence obtained during a search must be excluded. *See id.* at 569, 563 N.W.2d at 576.

■

The following factors must be considered under an attenuation theory: (1) the temporal proximity of the official misconduct and the subsequent statements by a defendant; (2) the presence of intervening circumstances; and (3) the purpose and flagrancy of the official misconduct. *See id.* We conclude that this case fails under the application of each of these factors.

When applying the temporal proximity factor, we must consider both the amount of time between the police misconduct and the conditions that existed during that time. *See id.* In *Phillips*, the alleged consent to search Phillips' living quarters followed almost immediately upon the heels of the agents' warrantless entry into the basement. *See id.* at 570, 563 N.W.2d at 577. During the moments between entry and the purported consent, this court noted that Phillips was confined in a storage area, in the presence of three agents, at least one of whom had just told him that they had information that he had drug paraphernalia. After Phillips admitted that he did have drug paraphernalia, an agent asked for permission to enter his bedroom to collect the items. *See id.* This court concluded that the initial illegal contact was not sufficiently attenuated to purge any consent of the primary taint. *See id.* at 570–71, 563 N.W.2d at 577.

Similarly, Kiekhefer's statements and alleged consent to search followed almost immediately upon the heels of the agents' warrantless entry into his room.

481

Between the entry and purported consent, Kiekhefer was restrained and detained inside his fifteen-by-twenty-foot room, in the presence of four armed agents, at least one of whom immediately began interrogating him about the location of any controlled substances. After Kiekhefer disclosed the location of all of the marijuana, signed a consent to search form at 6:25 p.m. and the agents searched the room, Zbleskwski advised Kiekhefer of his constitutional rights at 6:30 p.m. Zbleskwski testified that he did this approximately fifteen minutes after the agents entered the room. Clearly, within approximately ten minutes of entering Kiekhefer's room, the agents obtained the unwarned statements as well as the physical evidence. Thus, passage of time is not an attenuating factor. *See id.*

The second factor—intervening circumstances—also leads us to conclude that the evidence was not sufficiently attenuated from the illegal entry. The giving of *Miranda* warnings and the signing of a waiver of constitutional rights prior to a statement " 'weigh in favor of finding that the statement and resultant search were voluntary and sufficiently attenuated from the illegal searches.' " *Phillips*, 209 Wis. 2d at 571, 563 N.W.2d at 577 (quoted source omitted) (alterations omitted). Another intervening circumstance to consider is whether the defendant was given prior warning that he or she might be the target of a police investigation or whether he or she was " 'improperly surprised, frightened, or confused' " by the confrontation with the police. *See id.* (quoted source omitted).

In this case, there was a complete absence of intervening circumstances due in part to the temporal proximity of the agents' illegal entry into Kiekhefer's room and the subsequent interrogation and resultant

search. Kiekhefer was not given *Miranda* warnings until after the search; after the unannounced entry by the four agents, he was immediately handcuffed and interrogated by Zbleskwski. The manner in which Kiekhefer was taken into custody and interrogated "gives the appearance of having been calculated to cause surprise, fright and confusion." *Brown v. Illinois*, 422 U.S. 590, 605 (1975). The State cannot rely on the presence of intervening factors to purge the taint of the warrantless entry. *Cf. Phillips*, 209 Wis. 2d at 572, 563 N.W.2d at 577.

Finally, the conduct of these agents rises to the level of conscious or flagrant misconduct requiring suppression of the physical evidence derived from Kiekhefer's unwarned statements and the consent to search. The entire investigative procedure of these agents had a "quality of purposefulness" to it. *See Brown*, 422 U.S. at 605. The agents acknowledged that the purpose of the surveillance of Kiekhefer's residence was to watch for two vehicles listed to Wisneski (who they suspected might try to move his marijuana). After losing Wisneski, the agents decided "to do a consensual search of [Kiekhefer's] residence," yet they never asked for consent to search the house or to enter Kiekhefer's room. Outside of the door to Kiekhefer's room, the four agents discussed securing the residence pending a search warrant, but decided to forego the warrant and entered the room to secure it. Once inside, the agents then conducted a custodial interrogation of Kiekhefer without providing the *Miranda* warnings, under the guise of obtaining a *consensual* search of his room.

Such flagrant misuse of authority simply cannot be ignored. This is a case where suppression of the seized evidence would further the deterrent function of the exclusionary rule. Unless officers have obtained

actual consent, a search warrant issued by a neutral magistrate or are faced with exigent circumstances justifying entry, they have no right to step into the threshold of a doorway. *See State v. Johnson*, 177 Wis. 2d 224, 232–35, 501 N.W.2d 876, 879–80 (Ct. App. 1993). Without suppression, officers would be encouraged to exploit similar nonconsensual, warrantless entries in the hope of obtaining consent to search. The agents' nonconsensual, warrantless entry violated Kiekhefer's Fourth Amendment rights. Accordingly, the seized evidence should have been suppressed.

Even assuming that the entry into Kiekhefer's room was legal, a subsequent search or seizure required a warrant or an exclusion to the warrant requirement. *See United States v. deSoto*, 885 F.2d 354, 368–69 (7th Cir. 1989). On appeal, the State maintains that when the agents entered the room, they had probable cause to arrest Kiekhefer for possession of marijuana and were justified in searching his room incident to his arrest. We disagree.

A search may be incident to a subsequent arrest if the officers have probable cause to arrest before the search. *See Rawlings v. Kentucky*, 448 U.S. 98, 111 (1980). The officers have probable cause to arrest when, at the time of arrest, the officers have within their knowledge reasonably trustworthy facts and circumstances sufficient to warrant a reasonably prudent person to believe that the suspect has committed or is committing a crime. *See Beck v. Ohio*, 379 U.S. 89, 91 (1964). The probable cause standard is an objective one; the officers' subjective state of mind is irrelevant. *See Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

In this case, there was probable cause to take Kiekhefer into custody once the agents were in his

room. Zbleskwski testified that once inside Kiekhefer's room, he could detect a very strong odor of marijuana. This provided reasonable grounds for a prudent person to suspect that Kiekhefer was in possession of and smoking marijuana which is a crime. Whether the agents actually believed they had probable cause to arrest Kiekhefer is irrelevant.

Clearly, Kiekhefer was arrested once the agents entered his room. The standard used to determine the moment of arrest is whether a reasonable person in the defendant's position would have considered himself or herself to be "in custody," given the degree of restraint under the circumstances. *See State v. Swanson*, 164 Wis. 2d 437, 446–47, 475 N.W.2d 148, 152 (1991) (quoted source omitted). Immediately upon entering Kiekhefer's room, the agents handcuffed him and Christensen and seated them on the couch. A reasonable person would have considered himself to be in custody and arrested in this situation.

Assuming the arrest to be lawful, a situation is created which justifies a contemporaneous search without a warrant of the person arrested and the immediate surrounding area. *See State v. Murdock*, 155 Wis. 2d 217, 228, 455 N.W.2d 618, 622 (1990). Under the *Chimel v. California*, 395 U.S. 752 (1969), standard, the arresting officers may conduct a contemporaneous, limited search of the area immediately surrounding the arrestee measured at the time of the arrest without consideration to actual accessibility to the area searched. *See Murdock*, 155 Wis. 2d at 236, 455 N.W.2d at 626.

In *Murdock*, detectives entered Murdock's home with their weapons drawn and ordered Murdock and the two other men in the room to " 'hit the floor.' " *Id.* at

222, 455 N.W.2d at 620 (quoted source omitted). All three men were handcuffed with their hands behind their backs and remained restrained while lying on the floor face down. Contemporaneously with the handcuffing, a search of the room, which was about twelve-by-fourteen feet, and a connected pantry-type closet was executed. In the pantry, the detectives saw a bullet sitting on a pantry shelf which they seized. The detectives then searched through the three closed drawers of the pantry and found a short-barreled rifle in the middle drawer. *See id.* at 223, 455 N.W.2d at 620. The supreme court determined that under the *Chimel* standard, the pantry was within Murdock's immediate control and the search of the pantry incident to his arrest was therefore reasonable. *See Murdock*, 155 Wis. 2d at 236, 455 N.W.2d at 626.

■

This case is quite unlike *Murdock*; the search did not occur contemporaneously with the arrest. Rather, the agents arrested Kiekhefer and then attempted to obtain his *consent* to search the room. According to Londre, the agents requested permission to initially search the area where Kiekhefer was located—the ashtray and dresser drawer. Londre testified that the agents next asked whether they could search the room. Under the *Chimel* standard, it appears that the areas searched were within Kiekhefer's immediate control and a contemporaneous search of these areas would therefore be reasonable. The problem with the search in this case is that it was guided solely by Kiekhefer's answers to Zbleskwski's interrogation and was not contemporaneous with the arrest. *Murdock* is inapposite. *Cf. Murdock*, 155 Wis. 2d at 236–37, 455 N.W.2d at 626–27.

Because the agents' warrantless search does not fall within one of the carefully delineated exceptions, i.e., search incident to arrest or exigent circumstances, it was therefore unreasonable per se under the Fourth Amendment. Accordingly, we conclude that the trial court erred in denying Kiekhefer's motion to suppress the marijuana and rifles, and the judgment of conviction must be reversed.

*By the Court.*—Judgment reversed and cause remanded.