City of Sheboygan, Plaintiff-Respondent,
v.
Jason R. Zimbal, Defendant-Appellant.
No. 04-0418.
Court of Appeals of Wisconsin.
Opinion Filed: September 8, 2004.
¶1 BROWN, J.[1]
Jason R. Zimbal appeals his conviction for operating with a prohibited blood alcohol concentration and the circuit court's order denying his motion to suppress evidence.[2] He argues that the police did not have probable cause to arrest him and that his seizure must fall based on case law prohibiting officers from going inside a home when there is no warrant, no exigent circumstances and no consent. We hold that there was probable cause. We further hold that the case law Zimbal relies upon for his illegal seizure theory is inapplicable to this case. We affirm.
¶2 We first address the issue of probable cause to arrest. A City of Sheboygan police officer, responding to a hit-and-run of an unattended vehicle, talked to a witness who had heard the crash from his upstairs apartment. The witness identified himself and advised the officer that he ran outside to see if it was his vehicle that was hit and observed a dark-colored truck parked in the alley. The witness saw a male subject get out of the truck to look at the car that was hit; the male subject said something and then got back in the truck and drove up onto the grass of a neighbor's house. At that point, a "bunch of people got in the car, and the truck left." The witness was able to get the license number of the truck. He was also able to describe the subject as being tall, thin, and dark haired and he "thought the subject was definitely under twenty-one and intoxicated."
¶3 The officer ran a check of the license plate, which came back as listed to a female party by the last name of Zimbal. A further record search revealed prior vehicle contact history involving Jason Zimbal, age seventeen. The officer called the Zimbal home, spoke with a female who answered, advised her of the hit-and-run and asked if her son, Jason, had had the truck, to which the female replied, "yes." The officer then asked if the truck was home and received an affirmative response. The officer then advised that she was going to come over to the house.
¶4 The officer arrived at the house and wanted to speak with Jason, but was rebuffed for a period of time. We will get to that shortly. What is important for probable cause purposes is that before Jason presented himself outside of the home to the officer, his mother advised the officer that there was a delay because Jason had urinated on a chair due to his level of intoxication. Jason was arrested when he appeared on the porch.
¶5 Jason first argues that the trial court failed to decide whether there was probable cause even though the issue was raised in his motion papers and was an issue specifically voiced by his counsel in open court. We agree. It was raised; it was argued and the trial court did not address it. Still, the absence of such finding does not require reversal because whether probable cause existed is a question of constitutional fact that we review independently. See State v. Secrist, 224 Wis. 2d 201, 208, 589 N.W.2d 387 (1999). So it does not matter that the trial court did not address the issue. This is especially so where the historical facts are not disputed, but the legal result of those facts are at issue. The trial court's failure to address the issue is a nonstarter.
¶6 As to whether there was probable cause, we conclude that there was. Jason makes no argument in his appeal brief as to why probable cause did not exist except to refer us to his arguments to the court and his trial brief. So, we went back to the transcript on his motion to suppress and found that his sole reason for objecting to probable cause was his belief that the government "didn't obtain specific information in regard to [Jason's] impairment.... Just the general opinion that [the] person appears to have been impaired ... doesn't provide probable cause." We assume that Jason is referring to the statement of the witness on the scene that the truck driver was "definitely" intoxicated.
¶7 We agree with Jason to a point. The opinion of a citizen witness, by itself, is not enough for probable cause to arrest a person for driving while intoxicated. But that is not all the police had. They had evidence that Jason had hit a car, that he knew it, that he drove up on a neighbor's lawn, that he left the scene, andthis is from Jason's own motherthat Jason had urinated on a chair due to his level of intoxication. All of these factors, taken together, are more than sufficient to justify the arrest.
¶8 The second issue is the nonconsent claim. Jason cites familiar law that officers pursuing a person for violating the law may not enter a private home to retrieve that person, even if there is probable cause to arrest, unless there are exigent circumstances or unless there is consent to enter. He correctly points out that no exigent circumstance existed here, and we will assume without deciding, that at the time the officer first arrived at the door, until the time she learned that Jason had urinated on a chair due to his intoxication, she had no probable cause to arrest. Thus, Jason posits, the only way the officer was going to have contact with Jason was if she could gain consent to enter. Because that consent was not forthcoming, Jason argues that the eventual contact with and resultant seizure of Jason was illegal.
¶9 But, as the City of Sheboygan points out in its responsive brief, the officer never crossed the threshold of the Zimbal home to retrieve Jason. Jason came out of his home and was arrested once outside. So, none of the cases Jason citesand we do not feel the need to cite or discuss them hereare factually on point.
¶10 In reply, Jason hones his theory. Jason claims that he only came out because police threatened to get a warrant to enter the home if Jason's father, who had refused entry, did not cooperate and allow the officer into the home. He further asserts that because the hit-and-run was not the type of offense for which a warrant could be secured, it was not proper for the police to claim that they could get a warrant if the father did not cooperate. Jason then argues:
By threatening the Defendant's father with prosecution, by threatening to obtain a warrant, and by asserting the existence of probable cause where it did not exist, the police essentially forced the defendant's father to act as an agent of the police. Therefore, when the police compelled the Defendant's father to enter the home and retrieve the Defendant, it is tantamount to the police entering the home and doing the same.
¶11 Jason cites no case on point for his novel proposition that the father became the surrogate police infiltrator of the house due to illegal police coercion. But he does cite State v. Kiekhefer, 212 Wis. 2d 460, 569 N.W. 2d 316 (Ct. App. 1997), as tangential support. In that case, officers entered a suspect's room, uninvited and unannounced. Id. at 471. They made a sobering use of force, threatened to stay there until a search warrant was obtained and told the suspect that they could get a warrant if they wanted to. Id. at 471-73. We observed that police may not, by misrepresentation, threaten to obtain a search warrant when there are no grounds for a valid warrant. Id. at 473. We further held that the officers in that case had no right to imply that they could sit in the suspect's home for two hours while a warrant was being obtained. Id. We concluded that the officers' overall shady conduct intended to lead the suspect to believe that resistance to a search was futile and that the search would eventually be conducted without the suspect's consent at any rate. Id.
¶12 This case is far-and-away different from Kiekhefer. First of all, the arresting officer's captain, who talked to Jason's father on the telephone and advised him that he could seek a search warrant, actually thought he could get a warrant. He did not know until afterward that he could not seek a warrant for hitand-run of an unattended vehicle. He was also convinced that the father could be arrested for obstructing an officer. In Kiekhefer we wrote that while police may not threaten to obtain a search warrant where there are no grounds for a valid warrant, "when the expressed intention to obtain a warrant is genuine ... and not merely a pretext to induce submission, it does not vitiate consent." Id. (citation omitted). The officers in Kiekhefer used pretext to imply that they could sit inside the home for two hours while a warrant was obtained. In this case, however, it is undisputed that both the arresting officer and her captain had a genuine belief that they could obtain a warrant and a genuine belief that they could arrest the father for obstructing. Consent is not vitiated in this situation. Second, the facts in Kiekhefer were egregious. Several officers came into the suspect's bedroom unannounced and uninvited, handcuffed the suspect, and threatened to tear the place apart. The officer in this case never set foot in the house and exhibited no show of force. Consent was not vitiated by the conduct of the arresting officer or her captain.
¶13 We conclude that there was probable cause to arrest and that the seizure of Jason was lawful. We affirm the order denying the motion to suppress and the subsequent conviction.
By the Court.  Judgment and order affirmed.
NOTES
[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(f) (2001-02). All references to the Wisconsin Statutes are to the 2001-02 version unless otherwise noted.
[2] Zimbal claims in his brief that he stands convicted of both operating while under the influence, contrary to WIS. STAT. § 346.63(a), and operating with a prohibited blood alcohol concentration, contrary to § 346.63(b) (PAC). But the record is not that clear. The trial court's oral pronouncement from the bench on January 26, 2004, unambiguously found Zimbal guilty of operating a vehicle with a PAC and did not mention the operating under the influence charge. However, a document in the appellate record contains what appears to be a judgment for operating under the influence and other documents evidence a conviction for PAC, consistent with the oral pronouncement. State v. Perry, 136 Wis. 2d 92, 113-15, 401 N.W.2d 748 (1987), holds that when an unambiguous oral sentence contradicts a written judgment, the oral sentence controls. Here, the oral pronouncement, as we said, is unambiguous. The written docket entries, considered together, are not clear. We therefore conclude that Zimbal stands convicted of the PAC charge.