COURT OF APPEALS
DECISION
DATED AND FILED

December 21, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.      **2020AP721-CR**

STATE OF WISCONSIN

Cir. Ct. No.  2017CF585

**IN COURT OF APPEALS
DISTRICT III**

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

V.

MARK S. MILLER,

   DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Marathon County:  MICHAEL K. MORAN, Judge.  *Affirmed*.

Before Stark, P.J., Hruz and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM. Mark Miller appeals from a judgment of conviction for fifth-offense operating a motor vehicle while intoxicated (OWI),

and from the denial of his reconsideration motion. Miller argues that his consent for a blood draw was coerced and involuntary. We reject his arguments and affirm.

## BACKGROUND

¶2 Two Wisconsin State Troopers stopped Miller's pickup truck at approximately 11:12 p.m. after observing the vehicle blocking a driveway with an inoperable brake light. Miller was arrested for OWI after field sobriety tests were performed. Miller was read the Informing the Accused form, and the officers requested a blood sample. Miller initially refused. One of the officers told Miller that he would fill out a search warrant and call a judge, and the judge would sign a warrant authorizing a blood draw. Miller then agreed to give a blood sample. A test of that sample revealed an alcohol concentration of .166 percent.

¶3 Miller was charged with OWI and operating a motor vehicle with a prohibited blood alcohol content (PAC), both as fifth offenses. He moved to suppress the blood test results, arguing that the traffic stop was unlawful, and that his consent to the blood draw was coerced because the officer told him that if he refused, the officer would obtain a search warrant for a blood sample. The circuit court denied the suppression motion.

¶4 Miller then sought reconsideration, asserting that the officer impermissibly threatened him with a criminal penalty for refusing by telling him that, if he refused, in addition to revocation of his operating privilege, he would be "subject to other penalties." The circuit court also denied Miller's motion for reconsideration.

¶5      Miller then agreed to plead guilty to the OWI charge, and the PAC charge was dismissed.  The circuit court imposed three years' probation, with one year in jail as a condition, consistent with the parties' joint sentencing recommendation.  Miller now appeals.

## DISCUSSION

¶6      When the purported legality of a warrantless search is based on the consent of the defendant, that consent must be freely and voluntarily given.  ***State v. Johnson***, 2007 WI 32, ¶16, 299 Wis. 2d 675, 729 N.W.2d 182.  The State has the burden to prove by clear and convincing evidence that the defendant voluntarily consented.  ***Id.***  We uphold the circuit court's factual findings unless they are clearly erroneous, but the court's application of the historical facts to constitutional principles is reviewed de novo.  ***State v. Floyd***, 2017 WI 78, ¶11, 377 Wis. 2d 394, 898 N.W.2d 560.

¶7      Miller argues that his consent was "rendered involuntary due to the Trooper's deception and misrepresentation and coercion under the totality of the circumstances."  However, the circuit court made the following factual findings, which render Miller's argument meritless. First, the officers did not tell Miller that they already had a warrant thus rendering his refusal futile.  Instead, one of the officers told Miller that if he refused a blood draw, the officers would fill out a search warrant affidavit and call a judge, the judge would sign the warrant, and they would get a blood sample.  Miller then agreed to give a blood sample.  The officers did not improperly pressure Miller and they did not use deception, intimidation, or coercion.  These findings are not clearly erroneous.

¶8      Nevertheless, Miller argues that his consent was coerced and involuntary, for two reasons.  Miller first asserts that by telling him that if he

3

refused the officer would obtain a warrant for a blood draw, it was the equivalent of the officer representing that he already had a warrant. Miller therefore claims he had no choice but to agree to give a sample.

¶9 Our supreme court has recognized that "[t]hreatening to obtain a search warrant does not vitiate consent if the expressed intention to obtain a warrant is genuine … and not merely a pretext to induce submission." *State v. Artic*, 2010 WI 83, ¶41, 327 Wis. 2d 392, 786 N.W.2d 430 (citations omitted). In this case, based upon the suppression hearing evidence the circuit court could reasonably find that the officers would have sought and obtained a warrant. Under WIS. STAT. § 968.12(1) (2019-20),[1] "[a] judge shall issue a search warrant if probable cause is shown." Miller does not dispute that there was probable cause for a search warrant. At the preliminary hearing, one of the officers testified that after stopping Miller's vehicle, he observed that Miller had slurred speech, bloodshot eyes, and a strong odor of intoxicants on his breath. Miller admitted he had consumed four rum and Cokes. A preliminary breath test showed a blood alcohol concentration (BAC) of .174 percent. Quite simply, the officer told Miller the truth: if he refused to consent, the officer would obtain a search warrant for a blood sample.

¶10 Miller's reliance on case law is misplaced. *Bumper v. North Carolina*, 391 U.S. 543, 548 (1968), is distinguishable because unlike the officer in *Bumper*, the officer in this case did not tell Miller he already had a warrant. *State v. Kiekhefer*, 212 Wis. 2d 460, 473, 569 N.W.2d 316 (Ct. App. 1997), is

---

[1] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

inapposite because in that case "the agents had no right to imply that they could sit in Kiekhefer's home for two hours while a warrant was obtained." Notably, however, this court recognized in *Kiekhefer* that when there is probable cause and an officer intends to obtain a warrant, it is proper to so inform the defendant. *Id.* Miller's reliance on an unpublished case is also misguided, as it is not binding and nothing in that case suggests that the consent would have been involuntary had the officer told the defendant that he guaranteed he would obtain a warrant. *State v. Brown*, No. 2015AP2029-CR, unpublished slip op. (WI App Jan. 4, 2017).

¶11    Miller's second assertion is that by the officer reading from the Informing the Accused form after Miller's arrest and thereby telling Miller that he would be subject to other penalties if he refused a blood draw, the officer somehow "hinted to Miller that if he refused to consent to a blood draw he will be subjected to a criminal penalty, which is in violation of his rights." According to Miller, "[t]he reality is that Miller and any person being read the warnings contained in the Informing the Accused understands they are going to jail as they have just been arrested."

¶12    In *Mitchell v. Wisconsin*, 139 S. Ct. 2525, 2531-32 (2019), the Supreme Court noted that under Wisconsin's implied consent law, "[o]fficers seeking to conduct a BAC test must read aloud a statement declaring their intent to administer the test and advising drivers of their options and the implications of their choice." The Court further explained, "If a driver's BAC level proves too high, his license will be suspended; but if he refuses testing, his license will be *revoked* and his refusal may be used against him in court." *Id.*

¶13    Here, the officer read the Informing the Accused form to Miller verbatim. The form accurately informed Miller of the workings of the implied

consent law. In relevant part, it states: "If you refuse to take any test that this agency requests, your operating privilege will be revoked and you will be subject to other penalties. The test results or the fact that you refused testing can be used against you in court." WIS. STAT. § 343.305(4).[2]

¶14 Miller acknowledges that the Informing the Accused form does not mention criminal penalties, and he provides no citation to legal authority in support of his assertion that any reasonable person being read the warnings would assume they "are going to jail" for refusing. In fact, there is no indication that Miller himself understood "other penalties" to mean criminal punishment. Miller points to nothing in the record on appeal establishing that he believed he would face criminal penalties if he refused, or that he agreed to a blood draw to avoid going to jail.

¶15 The circuit court properly rejected Miller's claims. The officer did not even suggest that he already had a warrant, and he correctly told Miller—based on probable cause to support the application for a warrant—that he planned to apply for and obtain a warrant if Miller refused to consent to a blood draw. In addition, the officer correctly informed Miller of the general type of penalty he would face if he refused a blood draw and did not even suggest that Miller would go to jail for refusing. Miller's motion to suppress his blood test results and his reconsideration motion were properly denied.

---

[2] Wisconsin's implied consent law imposes only civil penalties for refusing, such as license revocation and required ignition interlock devices. *See* WIS. STAT. §§ 343.301(1g)(a)1., 343.305(10).

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.