STATE of Wisconsin, Plaintiff-Respondent,

v.

Jennifer M. PARISI, Defendant-Appellant.

Court of Appeals

No. 2014AP474–CR. Submitted on briefs September 23, 2014.
—Decided November 19, 2014.

2014 WI App 129

(Also reported in 857 N.W.2d 472.)

255

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Jeffrey A. Mann* of *Mann Law Office, LLC*, Oshkosh.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Donald V. Latorraca*, assistant attorney general, and *J.B. Van Hollen*, attorney general.

Before Neubauer, P.J., Reilly and Gundrum, JJ.

¶ 1. GUNDRUM, J.    Jennifer Parisi appeals from a judgment of conviction entered after the circuit court denied her motion to suppress evidence of drug

activity obtained following the warrantless entry into her apartment by several city of Oshkosh police officers. She does not dispute that officers had probable cause to believe the apartment contained evidence of a crime, but asserts they violated her Fourth Amendment rights because exigent circumstances did not exist to validate their entry without a warrant. We conclude that exigent circumstances did exist and the entry was lawful. We affirm.

## *Background*

¶ 2.   Two of the police officers testified at the suppression hearing related to Parisi's motion. Their relevant, undisputed testimony is as follows.

¶ 3.   Officer Derek Sell responded to a complaint of drugs at 1319 Clayton Court, Apartment 108. Sell met with the complainant, who described smelling burnt marijuana related to that apartment approximately an hour before Sell's arrival and also indicated that he had smelled marijuana there several times per week for several months. Sell went into the apartment complex hallway, in the area of Apartment 108, which was on the ground floor. Due to a sinus condition, he could not smell burning marijuana, but he pressed his ear up to the apartment door and heard what sounded like an adult male and adult female conversing. Sell confirmed in his testimony that he was "positive" the voices were coming from Apartment 108. He knocked on the apartment door three separate times, each time announcing that he was a police officer. After he did this, no one answered the door and he "could no longer hear any voices inside."

¶ 4.   Sell testified that another officer was positioned "on the outside patio door area." Sell asked that officer to come into the hallway to see if he could smell

anything. Sell stated that the officer was "probably at the point of just leaving the patio door and coming to me" around the time Sell knocked on the apartment door and announced a police presence. Because of this, Sell explained, there was about a "one to two minute[]" window of time where no one was observing the patio door area outside the apartment. Sell confirmed that when the other officer was in the hallway by Apartment 108, the officer indicated that he could smell the burning marijuana.

¶ 5. Several additional officers arrived on the scene, including an officer with a drug-detecting dog, which alerted to Apartment 108. Believing there were persons in the apartment who were aware police were at the door and out of concern evidence would be destroyed if they waited for a search warrant,[1] officers decided to enter the apartment without a warrant. Sell and other officers entered through the outside patio door, which had been slightly ajar prior to their entry. No persons were found in the apartment, but Sell observed "in plain view what appeared to be consistent with a baggie of marijuana on the living room coffee table area."

¶ 6. Officer Joseph Framke testified as follows. He arrived at the scene after the drug dog had alerted on Apartment 108. He explained that he had experience with drug investigations, including smelling burning marijuana, and stated that he smelled such an odor in the hallway area outside of that apartment. A collective decision was made to enter the apartment to secure it because the officers believed there were people inside

---

[1] Sell testified that "[i]t appeared that whoever may have been inside was aware of our presence, and based on past experience . . . as time goes by, the ability for suspects to destroy evidence increases."

259

who were not responding to a known police attempt to make contact and the officers were concerned evidence would be destroyed if they waited for a warrant. Upon entry, Framke observed a rolled up plastic baggie on the couch "in plain view." He testified that "[i]t's very common that controlled substances, including marijuana, are packed in such fashion." A field test of the substance in that baggie indicated it was marijuana. The officers applied for and received a warrant to search the apartment.

¶ 7. Parisi was charged with possession of tetrahydrocannabinols with intent to deliver. According to the criminal complaint, Apartment 108 was Parisi's residence and several baggies of marijuana were found throughout the apartment, along with $630 in cash. Parisi moved to suppress the evidence, and after the circuit court denied the motion, she pled no contest. Sentence was withheld and Parisi was placed on probation. She appeals, challenging the circuit court's denial of her motion to suppress.

## *Discussion*

¶ 8. Parisi contends exigent circumstances did not exist to justify the officers' warrantless entry into her apartment. We disagree.

¶ 9. Warrantless entry into a residence is generally prohibited by the Fourth Amendment to the United States Constitution. *State v. Robinson*, 2010 WI 80, ¶ 24, 327 Wis. 2d 302, 786 N.W.2d 463. An exception to this rule allows for such entry where there is probable cause to believe evidence of a crime will be found in the

residence[2] and there is "a risk that evidence will be destroyed" if time is taken to obtain a warrant, i.e., an exigent circumstance. *Id.*, ¶¶ 26, 30. "In such instances, an individual's substantial right to privacy in his or her home must give way to the compelling public interest in effective law enforcement." *Id.*, ¶ 24. The test for whether an exigent circumstance existed is an objective one—"whether a police officer, under the facts as they were known at the time, would reasonably believe that delay in procuring a search warrant would . . . risk destruction of evidence." *State v. Hughes*, 2000 WI 24, ¶ 24, 233 Wis. 2d 280, 607 N.W.2d 621. The burden is on the State to prove that an exigent circumstance existed. *Robinson*, 327 Wis. 2d 302, ¶ 24. In reviewing an order granting or denying a motion to suppress evidence, we will uphold a circuit court's factual findings unless they are clearly erroneous, but we review de novo whether those facts satisfy a particular constitutional standard. *Id.*, ¶ 22.

¶ 10.   Here, as the officers stood outside the apartment door, they were aware marijuana was being burned inside Apartment 108. Our supreme court has held that the smell of burning marijuana gives "rise to a reasonable belief that the drug—the evidence—was

---

[2] Parisi does not contest the circuit court's conclusion that the officers had probable cause to believe evidence of a crime would be found in Apartment 108. In light of the uncontested evidence at the suppression hearing, she would not have been likely to succeed had she made such a challenge. *See State v. Hughes*, 2000 WI 24, ¶¶ 21–22, 233 Wis. 2d 280, 607 N.W.2d 621 ("The quantum of evidence required to establish probable cause to search is a 'fair probability' that contraband or evidence of a crime will be found in a particular place . . . . The unmistakable odor of marijuana coming from Hughes' apartment provided this fair probability.") (citation omitted).

likely being consumed by the occupants and consequently destroyed." *Hughes*, 233 Wis. 2d 280, ¶ 26. As the *Hughes* court also observed based on the facts before it, an even greater exigency is

> the possibility of the intentional and organized destruction of the drug by apartment occupants once they were aware of the police presence outside the door. Marijuana and other drugs are highly destructible . . . . It is not unreasonable to assume that a drug possessor who knows the police are outside waiting for a warrant would use the delay to get rid of the evidence.

*Id.*, ¶ 26; *see also Robinson*, 327 Wis. 2d 302, ¶ 31 ("Drugs like marijuana are easily and quickly destroyed."). In this case, with the occupants of Apartment 108 quieting or ceasing their conversation and not answering the door after Sell knocked and announced the police presence, "the possibility of the intentional and organized destruction of the drug" existed.

¶ 11.  Parisi asserts that "law enforcement did not possess certainty that anyone was situated within Ms. Parisi's apartment." The record indicates otherwise. Although the circuit court did not make a specific finding as to whether Sell did or did not hear individuals speaking in the apartment prior to knocking on the door, the court did find the undisputed testimony of Sell and Framke to be "reasonable and believable." And Sell's testimony was that he heard an adult male and an adult female "talking inside Apartment 108." He further confirmed he was "positive" the voices were coming from inside of that apartment and this was because he had "had [his] ear pressed up to the door." In addition, two officers smelled the odor of burning marijuana, and

262

the drug dog alerted to the door of Apartment 108.[3] In that it is very unlikely the marijuana was burning without the aid of one or more persons, this provided additional support for the belief that there were persons in the apartment.[4]

■

¶ 12.  Parisi also contends exigent circumstances did not exist because "neither [officer] testified to hearing any sounds of destruction or so much as the flush of a toilet." The exigent circumstance exception, however, does not require that officers observe actual destruction of evidence taking place before making entry. To state the obvious, once an officer's presence is known and a toilet is flushed, at least some of the evidence has already been disposed. The exception rather requires only that officers have a reasonable belief "that delay in procuring a search warrant would . . . *risk* destruction of evidence." *Hughes*, 233 Wis. 2d 280, ¶ 24 (emphasis added).

---

[3] We treat the evidence related to the drug dog's alert to Apartment 108 as valid. We need not analyze potential constitutional issues related to the alert because Parisi has not challenged its validity. We note for completeness, however, that the alert occurred *prior to* the United States Supreme Court's ruling in *Florida v. Jardines*, 133 S. Ct. 1409 (2013), which held, based on the facts of that case, that "[t]he government's use of trained police dogs to investigate the home and its immediate surroundings is a 'search' within the meaning of the Fourth Amendment." *Id.* at 1417–18.

[4] Although no direct evidence was presented at the suppression hearing of occupants within the apartment escaping out the back patio door, the undisputed evidence was that around the time Sell knocked on the apartment door and announced the police presence, the officer posted to watch the patio door left to come into the building, so that the patio door was unobserved for "about one to two minutes." It is also undisputed that prior to the officers subsequently entering this ground floor apartment through the patio door, that door was "slightly ajar."

¶ 13. After Sell knocked on the apartment door and announced the police presence, the individuals he previously heard conversing in the apartment became quiet and did not answer the door, creating a reasonable inference that they were trying to avoid police detection.[5] An officer could reasonably believe that a person (or persons) who appears to be attempting to avoid police detection in this manner when the odor of burning marijuana is in the air is more likely to also attempt to prevent evidence from being discovered by the police, including through destruction of such evidence. An officer could also reasonably infer that the now-quiet occupants may have ceased conversing and not answered the door because upon announcement of the police presence, they became otherwise engaged in destroying evidence. *See id.*, ¶ 26 ("It is not unreasonable to assume that a drug possessor who knows the police are outside waiting for a warrant would use the delay to get rid of the evidence.").

¶ 14. Parisi appears to also assert that the exigent circumstances exception to the warrant requirement should not apply here because Sell created the exigent circumstances by knocking on the door. This position has been soundly rejected by both our supreme court

---

[5] Although there was nothing unlawful about the previously conversing occupants ceasing their conversation and not answering the door, as is often the case, lawful actions—or inactions—nonetheless can create an incriminating inference. *State v. Robinson*, 2010 WI 80, ¶ 32, 327 Wis. 2d 302, 786 N.W.2d 463; *State v. Waldner*, 206 Wis. 2d 51, 59–60, 556 N.W.2d 681 (1996); *see also United States v. Robles*, 37 F.3d 1260, 1263–65 (7th Cir. 1994) (concluding that exigent circumstances justifying warrantless entry existed where agents who were aware of drugs in a residence knocked on door and identified themselves as law enforcement agents but the occupants, who the agents had observed through a window, did not answer door).

and the United States Supreme Court. In *Robinson,* which involved suspected drug activity in Robinson's apartment, our supreme court addressed a nearly identical argument and held that the officers did not "impermissibly create[] the exigent circumstances merely by knocking on [Robinson's] door and announcing" themselves as police. *Robinson,* 327 Wis. 2d 302, ¶¶ 4, 32. In so acting, the court concluded, the officers "were conducting themselves in an utterly appropriate and lawful manner," and added that "[w]hen law enforcement agents act in an entirely lawful manner, they do not impermissibly create exigent circumstances." *Id.,* ¶ 32 (quoting *United States v. MacDonald,* 916 F.2d 766, 772 (2d Cir. 1990)). The court continued: "It was not the officers' knock and announcement that created the exigent circumstances . . . . Robinson's choice to run from the door [after police knocked and announced they were police] created the exigent circumstances that justified the officers' warrantless entry." *Id.*

¶ 15.    Similarly, in *Kentucky v. King,* 131 S. Ct. 1849 (2011), another police knock-and-announce case involving the smell of burning marijuana coming from behind an apartment door, the United States Supreme Court held that where police do not create the exigency "by engaging or threatening to engage in conduct that violates the Fourth Amendment, warrantless entry to prevent the destruction of evidence is reasonable and thus allowed." *Id.* at 1854, 1858. The Court added, "the Fourth Amendment requires only that the steps preceding the seizure be lawful," and specifically held that the officers' "bang[ing]" on the door and merely announcing their police presence was conduct which "was entirely consistent with the Fourth Amendment." *Id.* at 1858, 1863. Here, Sell merely knocked on the door to Apartment 108 and announced his police presence in an

obvious attempt to make contact with the occupants. This action was appropriate, lawful and reasonable; thus, the exigency exception to the warrant requirement was not undermined by Sell's actions.

¶ 16. Parisi cites to our decision in *State v. Kiekhefer*, 212 Wis. 2d 460, 569 N.W.2d 316 (Ct. App. 1997), in support of her assertion that no exigent circumstances existed. In that case, after smelling an odor of burning marijuana coming from behind Kiekhefer's closed bedroom door, officers entered his bedroom unannounced. *Id.* at 466. Although we concluded that the officers' entry was unlawful, *id.* at 480, *Kiekhefer* is of no assistance to Parisi because there was "no indication that Kiekhefer was aware" of the officers' presence outside his door. *Id.* at 477. As our supreme court noted while analyzing *Kiekhefer* in *Hughes*, the officers in *Kiekhefer* "entered the room based upon the odor alone, in the absence of any other facts suggesting exigency." *Hughes*, 233 Wis. 2d 280, ¶ 28. Here, in addition to the smell of burning marijuana, the police had strong reason to believe the previously conversing occupants were aware police were at the door trying to make contact, and after Sell knocked and announced the police presence, he could no longer hear them conversing and no one answered the door. As previously indicated, it is not a far stretch to conclude that those seeking to avoid detection by the police when the smell of marijuana is present would also be likely to destroy the marijuana to prevent that evidence from being discovered. *See id.*, ¶ 35 (With the smell of marijuana emanating from the apartment, the police "knew that once the people inside the apartment were alerted to their presence, the likelihood of intentional evidence destruction was extremely high.").

¶ 17.  *Kiekhefer* is also distinguishable because, as we stated in that case, the suspected contraband there—"a large quantity of marijuana"—"could not be easily or quickly destroyed in Kiekhefer's bedroom." *Kiekhefer*, 212 Wis. 2d at 478. In the case now before us, had the officers taken the time to procure a warrant before entry, the occupants would have had an entire apartment, presumably including sinks and toilets, to utilize for destruction of the suspected marijuana.

¶ 18.  Faced with the facts of which the officers were aware when they decided to enter the apartment, "a police officer . . . would reasonably believe that delay in procuring a search warrant would . . . risk destruction of evidence." *See Hughes*, 233 Wis. 2d 280, ¶ 24. The Fourth Amendment did not require the officers to take that risk.[6]

*By the Court.*—Judgment affirmed.

---

[6] The State also argues that, even if we did not conclude that exigent circumstances existed, the independent source doctrine should nonetheless preclude suppression of the evidence. *See State v. Carroll*, 2010 WI 8, ¶ 44, 322 Wis. 2d 299, 778 N.W.2d 1 (discussing the independent source doctrine). Because we conclude that exigent circumstances existed, we need not and do not address this issue. *See Sweet v. Berge*, 113 Wis. 2d 61, 67, 334 N.W.2d 559 (Ct. App. 1983) (this court need not address other issues when one is dispositive).

Parisi also argues that evidence obtained from within her residence should be suppressed as "fruit of the poisonous tree." Because we have concluded that the tree from which the fruit was obtained was not poisonous, the evidence is not suppressed.