COURT OF APPEALS
DECISION
DATED AND FILED

April 28, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2020AP1726**

STATE OF WISCONSIN

Cir. Ct. No.  2019JV17

IN COURT OF APPEALS
DISTRICT II

IN THE INTEREST OF B.W.R., A PERSON UNDER THE AGE OF 18:

STATE OF WISCONSIN,

  PETITIONER-RESPONDENT,

 V.

B.W.R.,

  RESPONDENT-APPELLANT.

APPEAL from an order of the circuit court for Walworth County: DAVID M. REDDY, Judge. *Affirmed.*

¶1    NEUBAUER, C.J.[1]  Brady[2] appeals from a delinquency order and the denial of his motion to suppress evidence obtained following law enforcement officers' warrantless entry into his apartment.  He asserts the entry was unlawful and all evidence flowing from it must be suppressed.  Because we conclude the entry was justified by the existence of probable cause and exigent circumstances, we disagree and affirm.

## *Background*

¶2    An evidentiary hearing was held on Brady's suppression motion at which two City of Elkhorn police officers collectively provided the following evidence.

¶3    On February 1, 2019, at approximately 10:07 p.m., on-duty police, Officer Michael Finster and Sergeant Daniel Croak, were dispatched to an apartment building to investigate a complaint by the resident of Unit D about marijuana use in the next-door Unit C.  Finster and Croak, who had been in law enforcement for three and one-half years and over thirteen years respectively, were in full-duty uniform.

¶4    The officers spoke with the complainant at Unit D, and Croak stepped inside Unit D and immediately smelled the strong odor of marijuana.  The neighbor stated that he noticed the odor upon arrival at his home shortly before

---

[1]  This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2019-20).  All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

[2]  We use the same pseudonym the juvenile uses in briefing to protect his confidentiality.

and that the neighbors in Unit C regularly smoked marijuana, which he could smell. Finster also smelled burnt marijuana coming from Unit C.

¶5    Croak was familiar with Unit C from prior police contacts and was aware of suspected drug use in the apartment, specifically of Brady dealing drugs on the property beginning approximately a year earlier.

¶6    Finster knocked on the door of Unit C while Croak was standing behind him. Brady pulled a closed blind away from the window next to the door and looked out at the officers. When Brady did not open the door, the officers knocked again. Tammy, who the officers recognized as Brady's mother from prior contacts, opened the door and the officers smelled a strong odor of burnt marijuana coming from inside the apartment.

¶7    Finster told Tammy about the complaint, confronted her about the odor, and asked to enter. She said no, and as she began to shut the door, Finster leaned into it and the officers entered the apartment. The officers discovered the evidence leading to the drug-related charges in this case.

¶8    The circuit court denied the suppression motion and Brady was ultimately adjudicated delinquent and sentenced. He now appeals.[3]

---

[3] The disposition order before us on appeal encompassed other charges from separate cases that are not relevant to this appeal.

## *Discussion*

¶9    The issue is whether exigent circumstances supported the warrantless entry into the apartment.  Brady concedes that the officers had probable cause to believe that the residence contained evidence of a crime.  However, he contends the entry was unlawful because exigent circumstances did not exist.  We disagree.

¶10    As we stated in *State v. Parisi*, 2014 WI App 129, 359 Wis. 2d 255, 857 N.W.2d 472:

> Warrantless entry into a residence is generally prohibited by the Fourth Amendment to the United States Constitution.  An exception to this rule allows for such entry where there is probable cause to believe evidence of a crime will be found in the residence and there is "a risk that evidence will be destroyed" if time is taken to obtain a warrant, i.e., an exigent circumstance.  "In such instances, an individual's substantial right to privacy in his or her home must give way to the compelling public interest in effective law enforcement."  The test for whether an exigent circumstance existed is an objective one—"whether a police officer, under the facts as they were known at the time, would reasonably believe that delay in procuring a search warrant would ... risk destruction of evidence."

*Id.*, ¶9 (citations omitted).  It is the state's burden to show that an entry without a warrant is "both supported by probable cause and justified by exigent circumstances."  *See State v. Robinson*, 2010 WI 80, ¶24, 327 Wis. 2d 302, 786 N.W.2d 463.  When reviewing an order granting or denying a motion to suppress evidence, we uphold a circuit court's findings of historical fact unless they are clearly erroneous, but "we independently apply constitutional principles to those facts."  *Id.*, ¶22.

¶11    With good reason, Brady concedes that the officers had probable cause to believe that the apartment contained evidence of a crime. Nevertheless, we briefly address the issue as it provides foundation for the exigent circumstances analysis.

¶12    "The quantum of evidence required to establish probable cause to search is a 'fair probability' that contraband or evidence of a crime will be found in a particular place." *State v. Hughes*, 2000 WI 24, ¶21, 233 Wis. 2d 280, 607 N.W.2d 621 (citation omitted); *see also* **Robinson**, 327 Wis. 2d 302, ¶3 (concluding officers had probable cause to search because evidence of illegal drug activity "would probably be found" in the place to be searched). Our supreme court has held that "[t]he unmistakable odor of marijuana coming from [a suspect's] apartment provide[s] this fair probability." *Hughes*, 233 Wis. 2d 280, ¶22. Similarly, here, the unmistakable odor of marijuana coming from the apartment provided "a 'fair probability' that contraband or evidence of a crime [would] be found" there. *See* *id.*, ¶21.

¶13    The officers testified that they were dispatched to the apartment to investigate marijuana use in Unit C. They spoke with the neighboring complainant and noted the odor. When Tammy opened the door, they confirmed the smell of marijuana coming from Unit C. The officers reasonably concluded that marijuana use was taking place in Unit C. Based upon these facts, as in *Hughes*, there was a "fair probability" here that evidence of a crime—the

possession of marijuana—would be found in Unit C. Thus, the officers had probable cause to search the residence for evidence of such crime.[4]

¶14    As it pertains to the facts here, "[t]he test for whether an exigent circumstance existed is an objective one—'whether a police officer, under the facts as they were known at the time, would reasonably believe that delay in procuring a search warrant would … risk destruction of evidence.'" *See Parisi*, 359 Wis. 2d 255, ¶9 (quoting *Hughes*, 233 Wis. 2d 280, ¶24). The undisputed facts of this case squarely satisfy that test.

¶15    We first note here that the smell of burnt marijuana itself indicated evidence was being destroyed through the process of burning. *See id.*, ¶10 ("Our supreme court has held that the smell of burning marijuana gives 'rise to a reasonable belief that the drug—the evidence—was likely being consumed by the occupants and consequently destroyed.'" (quoting *Hughes*, 233 Wis. 2d 280, ¶26)). However, an even greater exigency is

> the possibility of the intentional and organized destruction of the drug by the apartment occupants once they were aware of the police presence outside the door. Marijuana and other drugs are highly destructible…. It is not unreasonable to assume that a drug possessor who knows the police are outside waiting for a warrant would use the delay to get rid of the evidence.

*Hughes*, 233 Wis. 2d 280, ¶26; *see also Robinson*, 327 Wis. 2d 302, ¶31 ("Drugs like marijuana are easily and quickly destroyed.").

---

[4]  While Brady contends that the officers' testimony regarding prior complaints was not substantiated and therefore unreliable, this information is not required in order to find that probable cause or exigent circumstances supported the entry.

¶16     The risk was significant that if the officers delayed entry to obtain a warrant the occupants would have engaged in "the intentional and organized destruction of the drug." *See Hughes*, 233 Wis. 2d 280, ¶¶26, 39. Both Brady and Tammy were in the apartment and aware of the officers' presence as well as the complaint of marijuana use. An officer could reasonably believe that the occupants were likely to "attempt to prevent evidence from being discovered by the police, including through destruction of such evidence." *See Parisi*, 359 Wis. 2d 255, ¶13.

¶17     In *Hughes*, our supreme court held that exigent circumstances exist where there is a strong odor of marijuana emanating from a residence and occupants simply become aware of police outside the door. *Hughes*, 233 Wis. 2d 280, ¶¶1, 27, 35 (adding that in such circumstances the occupants "ha[ve] every incentive to intentionally destroy evidence" and the likelihood that they will do so is "extremely high").[5]

¶18     Brady cites to our decision in *Kiekhefer* for his contention that the warrantless entry into his home did not fall within the exigent circumstances exception. *See State v. Kiekhefer*, 212 Wis. 2d 460, 569 N.W.2d 316 (Ct. App. 1997). *Kiekhefer* does not aid Brady.

¶19     In *Kiekhefer*, we found unlawful the officers' unannounced entry into Kiekhefer's bedroom after they detected the odor of burning marijuana

---

[5] Unlike in *State v. Phillips*, No. 2015AP927-CR, unpublished slip op. ¶30 (WI App June 14, 2016) (an unpublished case Brady cites for persuasive value), where the officers smelled raw marijuana and there was no indication that anyone was in the residence other than a small child who had exited, here the officers smelled burnt marijuana and the occupants were still in the apartment.

coming from behind the closed bedroom door. *Kiekhefer*, 212 Wis. 2d at 466, 474-75. As we noted in *Parisi*, however, in *Kiekhefer* there was "'no indication that Kiekhefer was aware' of the officers' presence outside his door," *Parisi*, 359 Wis. 2d 255, ¶16 (quoting *Kiekhefer*, 212 Wis. 2d at 477), with the implication being that in such a circumstance there was no risk of the destruction of evidence if the officers waited for a warrant. *See also Hughes*, 233 Wis. 2d 280, ¶28 (distinguishing *Kiekhefer* because Kiekhefer "was in his room apparently unaware of [the police officers'] presence until they entered without a warrant"). Furthermore, our decision in *Kiekhefer* was also based upon our conclusion that the suspected contraband in that case—"a large quantity of marijuana"—"could not be easily or quickly destroyed in Kiekhefer's bedroom." *Kiekhefer*, 212 Wis. 2d at 478. In *Parisi*, we distinguished the factual situation before us in that case from that before us in *Kiekhefer* because in *Parisi*, "the occupants would have had an entire apartment, presumably including sinks and toilets, to utilize for destruction of the suspected marijuana." *Parisi*, 359 Wis. 2d 255, ¶17.

¶20 Unlike the situation in *Kiekhefer*, in this case, when Brady peered out the window and saw the police, declining to open the door, he was well aware of the officers' presence and with that knowledge remained in the location where evidence of criminal activity was likely located. Also, unlike the situation in *Kiekhefer* but akin to the situation in *Parisi*, here the occupants "would have had an entire apartment, presumably including sinks and toilets, to utilize for destruction of the suspected marijuana." *See Parisi*, 359 Wis. 2d 255, ¶17.

¶21 That the officers did not hear anything indicating the destruction of evidence was underway is of no moment under these facts. "Drugs like marijuana are easily and quickly destroyed." *Robinson*, 327 Wis. 2d 302, ¶31. "In deciding whether actions are permissible under the Fourth Amendment, we need only

determine that the actions of law enforcement were reasonable." *Hughes*, 233 Wis. 2d 280, ¶23. Furthermore, "[o]ur review of the exigent circumstances is 'directed by a flexible test of reasonableness under the totality of the circumstances.'" *State v. Phillips*, 2009 WI App 179, ¶8, 322 Wis. 2d 576, 778 N.W.2d 157 (quoting *State v. Smith*, 131 Wis. 2d 220, 229, 388 N.W.2d 601 (1986)). At the moment Tammy began to shut the door, the officers' actions in entering without a warrant were reasonable under the totality of circumstances.[6]

¶22 For the foregoing reasons, we conclude the officers had probable cause to enter the apartment without a warrant and exigent circumstances justified their decision to do so.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

---

[6] Brady contends that the officers should have obtained a warrant after talking with the neighbor—that because they had sufficient probable cause at that juncture, they should have stopped to obtain a warrant. However, Brady also appropriately acknowledges that the officers were not required to do so. As Brady notes, the officers could lawfully knock to obtain consent without obtaining a warrant, even if they had sufficient evidence to do so. *See Kentucky v King*, 563 U.S. 452, 466-67 (2011) (where the Court also held that prior cases denying exigency based on arguments premised on "police-created exigency" by knocking and announcing have been abrogated); *see, e.g.*, *State v. Robinson*, 2010 WI 80, ¶32, 327 Wis. 2d 302, 786 N.W.2d 463 (police conduct themselves in "utterly appropriate and lawful manner" when knocking and announcing).

We do not consider Brady's suggestion that the exigency analysis should be different because the evidence discovered with this entry led to a juvenile disposition as it is undeveloped. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (court of appeals need not consider inadequately developed arguments).