STATE of Wisconsin, Plaintiff-Respondent,

v.

Kevin Raphael LEE, Defendant-Appellant.†

Court of Appeals

*Nos. 2007AP2976–CR, 2007AP2977–CR. Submitted on briefs November 12, 2008.—Decided June 4, 2009.*

2009 WI App 96

(Also reported in 771 N.W.2d 373.)

† Petition to review denied 10/20/09. Abrahamson, C.J. and Bradley, J., dissent..

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Robert E. Haney*, Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Aaron R. O'Neil*, assistant attorney general, and *J.B. Van Hollen*, attorney general.

Before Vergeront, Lundsten and Bridge, JJ.

¶ 1. BRIDGE, J. Kevin Lee appeals judgments of conviction entered against him. He argues that the circuit court erred when it denied his motion to suppress evidence seized when police officers entered his apartment after viewing suspected drugs and drug paraphernalia through the apartment's open door, and after announcing their presence and receiving no response. Lee contends that the officers' warrantless

entry into his apartment violated his Fourth Amendment right to be free of unreasonable searches and seizures, and that no exigent circumstances justified the entry. We disagree and affirm.

## BACKGROUND

¶ 2.   During the early evening hours of April 12, 2005, police officers went to the upper unit of a duplex on the north side of Milwaukee to investigate complaints of drug dealing there. Officers asked and received permission from the lower resident to enter a common hallway which contained a stairway leading to the upper apartment. At the top of the stairs, the officers found the door to the apartment wide open. Within plain sight of the doorway, on a small table located ten feet or less from where they were standing, the officers observed two plastic baggies containing a substance suspected to be marijuana, as well as a scale[1] and a plate, both of which contained white residue suspected to be cocaine, and a razor blade. A box of baggies was lying on the floor next to the table. There were no occupants in view. The officers announced their presence, but received no response.

¶ 3.   The officers undertook a "protective sweep" of the unit in search of the apartment's occupants, which uncovered additional evidence of drugs and drug trafficking. The search revealed that the residence was unoccupied. However, the officers found a driver's license and Social Security card issued to Lee. After a short wait, Lee arrived at the residence and was ar-

---

[1] One of the officers testified at the hearing on Lee's suppression motion that he did not see the scale until after he entered the apartment. A second officer testified that he observed the scale before their entry.

rested. A search of Lee revealed that he was in possession of narcotics, and he admitted to the officers that the marijuana, scale and cocaine were his.

¶ 4. Lee was charged with possession of a controlled substance with intent to deliver as a repeat offender in violation of WIS. STAT. §§ 961.41(1m)(cm)3 and 961.48 (2007–08),[2] and keeping a drug house as a repeat offender in violation of WIS. STAT. §§ 961.42(1) and 961.48.[3] Lee moved to suppress the evidence seized from his apartment. Following a hearing, the circuit court denied the motion.[4] Lee moved for reconsideration, which was also denied. Lee pled guilty to the charges against him and these appeals follow. We reference additional facts as needed in the discussion below.

---

[2] All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise noted.

[3] Lee was also later charged with uttering a forgery in violation of WIS. STAT. § 943.38(2), to which he ultimately entered a plea. He was sentenced by the court on the drug convictions and the forgery conviction at the same time. The two cases have been consolidated on appeal. Because the issues on appeal relate primarily to Lee's drug convictions, our factual references are drawn from the record in that matter, which is Case No. 2007AP2976–CR. Lee does not advance any arguments on appeal challenging his conviction on the forgery charge. However, he contends that the court considered the drug convictions when it imposed sentence on the forgery conviction and, because the drug conviction should be reversed on appeal, he is entitled to resentencing on the forgery conviction. Because we affirm the drug conviction, we do not discuss this argument any further.

[4] The circuit court ruled that the warrantless entry was justified under the "plain view" doctrine as well as under the need to perform a protective sweep to protect the officers' safety. Lee does not challenge the ruling that the evidence seen through the open door was in plain view.

## STANDARD OF REVIEW

■■

¶ 5. On review of a circuit court's denial of a motion to suppress, we will uphold the circuit court's findings of fact unless they are clearly erroneous. *State v. Drew*, 2007 WI App 213, ¶ 11, 305 Wis. 2d 641, 740 N.W.2d 404; Wis. Stat. § 805.17(2). Whether a warrantless search is valid, however, is a question of law which we review de novo. *State v. Guzman*, 166 Wis. 2d 577, 586, 480 N.W.2d 446 (1992).

## DISCUSSION

■

¶ 6. "The Fourth Amendment to the United States Constitution and art. I, § 11 of the Wisconsin Constitution both protect against unreasonable searches and seizures." *State v. Phillips*, 218 Wis. 2d 180, 195, 577 N.W.2d 794 (1998). The Fourth Amendment was primarily intended to protect against physical entry into the home. *See id.* at 195–96. Therefore, warrantless searches "are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967) (footnote omitted). "These exceptions have been 'jealously and carefully drawn,' and the burden rests with those seeking exemption from the warrant requirement to prove that the exigencies made that course imperative." *State v. Boggess*, 115 Wis. 2d 443, 449, 340 N.W.2d 516 (1983).

¶ 7. The Fourth Amendment is not, however, an absolute bar to warrantless, nonconsensual entries into private residences. Our laws recognize that, under

special circumstances, it would be unrealistic and contrary to public policy to bar law enforcement officers at the door. *State v. Smith*, 131 Wis. 2d 220, 228, 388 N.W.2d 601 (1986). Wisconsin courts and the United States Supreme Court have recognized exceptions to the warrant requirement when the State can demonstrate "both probable cause and exigent circumstances that overcome the individual's right to be free from government interference." *State v. Hughes*, 2000 WI 24, ¶ 17, 233 Wis. 2d 280, 607 N.W.2d 621. Under these circumstances, "the individual's substantial right of privacy in the home must reasonably yield to the compelling public need to permit effective law enforcement." *Smith*, 131 Wis. 2d at 228.

¶ 8.  Thus, "[t]o determine whether the entry was lawful, we must answer two questions:  first, did the officers have probable cause to believe that [the] apartment contained evidence of a crime, and second, did exigent circumstances exist at the time of the entry to establish an exception to the warrant requirement?" *Hughes*, 233 Wis. 2d 280, ¶ 18. The quantum of evidence required to establish probable cause to search a residence is a "fair probability" that evidence of a crime will be found at a particular place. *Id.*, ¶ 21. Given the unobstructed view of illegal narcotics and related evidence that was available to the officers in the present case, that threshold is easily met. Not surprisingly, Lee does not dispute that the officers had probable cause to believe that his apartment contained evidence of a crime. Our inquiry therefore focuses on whether the State has established exigent circumstances justifying the failure to obtain a warrant before entering Lee's apartment.

¶ 9. There are four well-recognized categories of exigent circumstances that have been held to authorize a law enforcement officer's warrantless entry into a residence: (1) hot pursuit of a suspect; (2) a threat to the safety of a suspect or others; (3) a risk that evidence will be destroyed; and (4) a likelihood that the suspect will flee. *State v. Richter*, 2000 WI 58, ¶ 29, 235 Wis. 2d 524, 612 N.W.2d 29. Whether exigent circumstances exist turns on considerations of reasonableness, and we apply an objective test when making this determination. *Id.*, ¶ 30. The test is " '[w]hether a police officer under the circumstances known to the officer at the time [of entry] reasonably believes that delay in procuring a warrant would gravely endanger life or risk destruction of evidence or greatly enhance the likelihood of the suspect's escape.' " *Id.*

¶ 10. The State relies primarily on the second exception articulated in *Richter* regarding a threat to safety.[5] It is well established that "[t]he Fourth Amendment does not require police officers to delay in the course of an investigation if to do so would gravely endanger their lives or the lives of others." *Warden v. Hayden*, 387 U.S. 294, 298–99 (1967). The State contends that the investigating officers reasonably believed that entry into Lee's apartment in order to perform a protective sweep was necessary to ensure their personal safety.

---

[5] As we discuss below, however, in the context of the officers' entry into Lee's apartment, the second exception articulated in *Richter* regarding a threat to safety also implicates the third *Richter* exception regarding the destruction of evidence. *State v. Richter*, 2000 WI 58, ¶ 29, 235 Wis. 2d 524, 612 N.W.2d 29.

¶ 11. " 'A protective sweep is a brief search of the premises, *ordinarily* occurring during an arrest, to ensure the safety of those on the scene.' " *State v. Horngren*, 2000 WI App 177, ¶ 20, 238 Wis. 2d 347, 617 N.W.2d 508. A protective sweep is justified when the law enforcement officer possesses " 'a reasonable belief based on specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warranted the officer in believing that the area swept harbored an individual posing a danger to the officer or others.' " *State v. Sanders*, 2008 WI 85, ¶ 32, 311 Wis. 2d 257, 752 N.W.2d 713. *See also Maryland v. Buie*, 494 U.S. 325, 327 (1990).[6]

¶ 12. Lee does not challenge the officers' protective sweep once inside his apartment; instead, he contends that the officers' initial warrantless entry was unlawful. Lee argues that, because the officers did not see or hear anyone in the apartment, there was no likelihood that a suspect was in a position to flee. He also argues that the contraband was within the officers' sight, and thus there was no danger of it being destroyed while the officers took the time necessary to seek a warrant. Lee's arguments miss the mark.

¶ 13. The officers who presented themselves at Lee's front door were investigating a complaint of drug activity at Lee's address. After gaining entry to the common area of the building by virtue of the consent

---

[6] The protective sweep extends " 'to a cursory inspection of those spaces where a person may be found' and may last 'no longer than is necessary to dispel the reasonable suspicion of danger.' " *State v. Sanders*, 2008 WI 85, ¶ 33, 311 Wis. 2d 257, 752 N.W.2d 713. Lee does not contend that the sweep in the present case exceeded this standard.

545

given by the occupant of the downstairs unit,[7] they came upon the open front door of Lee's apartment, with drugs in plain view inside. Officer Scott Iverson testified that the door to the apartment was "wide open" at a ninety degree angle. He stated further that "[w]e yelled Milwaukee police and there was no answer and we did it again . . . ." Iverson also testified that "[w]e did a protective sweep to make sure there wasn't anybody in there." Officer Phillip Simmert, who responded with Iverson to Lee's residence, testified that after the officers received no response when they announced their presence, they "cleared the unit to make sure nobody was hiding, [sic] jump out on us."

¶ 14.   We conclude that these facts would allow a reasonable police officer to believe that entry into Lee's apartment in order to perform a protective sweep was necessary due to a potential threat to the officers' safety. In light of the wide open door, the officers could reasonably believe that someone was likely inside. People do not customarily leave the front door to their residences open when they leave, especially when illegal narcotics are easily seen through the open door. The officers announced their presence and received no response. From this, the officers could reasonably believe that persons inside the apartment were aware that police officers were outside the open door, that controlled substances and other evidence of criminal activity were visible to the officers, that the occupants were the subject of police suspicion, and that a raid may be imminent. The officers could also reasonably believe that the occupants were, under these circumstances,

---

[7] Lee does not dispute that the officers were lawfully in the hallway outside of his apartment.

nervous and agitated, and would take the steps necessary to evade apprehension.

¶ 15. Further, the officers could reasonably believe that the occupants were connected with drug activity and may be dangerous. Felony drug investigations may frequently involve a threat of physical violence and the likelihood that evidence will be destroyed. *Richards v. Wisconsin*, 520 U.S. 385, 391 (1997). *See also State v. Guy*, 172 Wis. 2d 86, 96, 492 N.W.2d 311 (1992) (guns are "tools of the trade" in drug trafficking). As the circuit court stated, "this wasn't a question where they were going to outwait each other. The officers should not be in a situation where they are subject to someone obviously popping up and perhaps firing a weapon."

¶ 16. We agree. The officers were faced with a Hobson's choice if they did not enter the apartment to perform a protective sweep. If they waited on the landing and guarded the drugs for the time necessary to obtain a warrant, they may have found themselves in grave danger. If they retreated in an attempt to avoid the potential danger, an occupant would likely destroy the evidence. Nothing in the record suggests that the amount of drugs the officers saw through the open door was too voluminous to be easily disposed of, and Lee does not argue to the contrary. Moreover, retreating would not necessarily obviate the potential risk to the officer's safety during the time it took to decide to return down the stairs and then to do so. We conclude that articulable facts exist to demonstrate that the officers had reasonable suspicion that individuals may be hiding in the apartment who would pose a danger to them, and that a warrantless entry into the apartment for purposes of conducting a protective sweep of the apartment was justified.

¶ 17. Lee argues in his reply brief that in *State v. Kiekhefer*, 212 Wis. 2d 460, 569 N.W.2d 316 (Ct. App. 1997), this court found no justification for a warrantless search under circumstances similar to those here.[8] We disagree; *Kiekhefer* is fundamentally different. In *Kiekhefer*, police, acting on a tip that Kiekhefer was holding illegal narcotics and guns for a friend, sought and received permission from Kiekhefer's mother to enter the house in which he was living. *Id.* at 465–66. As the officers approached the closed door to Kiekhefer's room, they smelled the odor of burning marijuana. *Id.* at 466. They opened the door, walked in, and immediately handcuffed Kiekhefer and a friend who was with him. *Id.* The State offered two theories in support of its claim of exigent circumstances: (1) the possibility of the destruction of evidence if the officers withdrew from the area in order to obtain a warrant, and (2) that the officers could reasonably infer that the room was the situs of drug activity, that the occupants of the room would be armed, and that they would attempt to use their weapons against the officers if given the opportunity to do so. *Id.* at 476–77.

¶ 18. We concluded that both theories were unsupported by the record. With respect to the destruction of evidence, we noted that the officers believed that Kiekhefer was in possession of a large quantity of marijuana, but that such an amount could not be easily or quickly destroyed in Kiekhefer's bedroom, and thus immediate action was not required. *Id.* at 478. As we discuss in paragraph 16 above, that is not the situation here. With respect to the officers' safety, *Kiekhefer* is

[8] We ordinarily do not consider arguments raised for the first time in a reply brief. *See Bilda v. County of Milwaukee*, 2006 WI App 57, ¶ 20 n.7, 292 Wis. 2d 212, 713 N.W.2d 661. In the interest of completeness, however, we will do so in this case.

different because in that case, there was also no indication that Kiekhefer was aware of the officers' presence. *Id.* at 477. In contrast here, the police had less information and reasonably announced their presence, thereby alerting any possible occupant or occupants. Unlike *Kiekhefer*, where we noted that "the record demonstrates that the agents had the situation well in hand," *id.*, here the officers had little information and little time to assess the threat they faced.

¶ 19. As we discuss above, the officers in the present case found themselves in the middle of an unstable situation—having to decide whether to stand guard over the open door to an apartment potentially occupied by armed individuals prepared to attack them while they took the time necessary to obtain a warrant, or instead to retreat and risk the destruction of the evidence, along with a continuing risk of attack. These circumstances posed the sort of special risks that did not exist in *Kiekhefer* which required the officers to act immediately and to forego obtaining a warrant.

¶ 20. We conclude that the officers in the present case could reasonably believe that a delay in procuring a search warrant would gravely endanger life or risk the destruction of evidence and that the warrantless entry of Lee's apartment for purposes of conducting a protective sweep was justified. It follows that the circuit court did not err in denying Lee's motion to suppress the evidence seized in his apartment following the officers' entry.

*By the Court.*—Judgments affirmed.