COURT OF APPEALS
DECISION
DATED AND FILED

July 23, 2019

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal Nos.   **2018AP1869-CR**
                  **2018AP1870-CR**
STATE OF WISCONSIN

Cir. Ct. Nos.  2017CF1394
2017CF1857

IN COURT OF APPEALS
DISTRICT I

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

   V.

KENNETH K. GORDON,

   DEFENDANT-APPELLANT.

APPEALS from judgments of the circuit court for Milwaukee County:  T. CHRISTOPHER DEE, Judge.  *Affirmed*.

Before Brash, P.J., Kessler and Dugan, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM. Kenneth K. Gordon appeals his judgments of conviction for endangering safety by using a dangerous weapon and felony intimidation of a witness.  Gordon asserts that the trial court erred in denying his motion to suppress the gun that was seized from his residence during the execution of a search warrant issued subsequent to Gordon's arrest, after a protective sweep of the home had been performed.  Gordon argues that the protective sweep was unconstitutional, and that this alleged "flagrant police misconduct" warrants suppression of the evidence obtained in the subsequent search pursuant to the warrant.

¶2     Additionally, Gordon argues that there was insufficient evidence to support his convictions.  Furthermore, with regard to his conviction for witness intimidation, he asserts that his Sixth Amendment right to confrontation was violated.  We disagree and affirm.

## BACKGROUND

¶3     The charges against Gordon stem from incidents that occurred in March of 2017.  Milwaukee Police were called to a residence on South 50th Street in Milwaukee just after midnight on March 20, 2017, to investigate a shooting.  Officers observed spent 9mm shell casings scattered in the street, damage to a window they suspected was from bullets being fired at it, and ground strikes that also appeared to have been caused by bullets being fired into the front yard.

¶4     Police found K.M.S. inside the residence.  She was lying on a couch, bleeding from a wound to her back caused by being grazed by a bullet.  Her boyfriend, M.J.W., told police that not long before the shooting, Gordon—who M.J.W. knew as "T.J."—had pulled up in front of M.J.W.'s house in a newer, silver four-door automobile, driven by Gordon's girlfriend.  M.J.W. explained that

2

Gordon was a drug dealer and was usually armed with a pistol. M.J.W. had gotten into the vehicle with Gordon, and they got into an argument. M.J.W. said that Gordon threatened to shoot him, and as M.J.W. exited the vehicle, Gordon yelled "you don't know who you are fucking with" and said that he would be back.

¶5    Approximately five to ten minutes later, M.J.W. stated that he heard gunshots outside of his house. He ran into the hallway where K.M.S. was walking and pushed her into a bathroom. He stated that he saw plaster and wood flying by his face while they were hiding in the bathroom. He then observed that K.M.S. was bleeding, so he crawled out to the living room to get his phone to call for help. He looked out the window and saw the same silver car that Gordon had been in earlier.

¶6    M.J.W. identified Gordon from a photo array. Additionally, an officer who was a few blocks away from the residence at the time of the shooting observed a silver 2017 Buick Verona run a stop sign just before he heard the police dispatcher's call regarding the shooting. He observed that there were two occupants in the vehicle and noted the license plate number.

¶7    Officers went to a residence on North 24th Street where Gordon's girlfriend was known to live[1] and observed the silver Buick parked in the rear. They also saw Gordon exit the house and go into the backyard, and then re-enter the house. Officers at the front of the house made contact with some of the occupants, who at first locked the front door and refused to come out. Officers at the rear of the house made contact with Gordon and arrested him. They then did a

---

[1] It turned out that this residence was Gordon's mother's house.

protective sweep of the residence, given that this was an investigation into a shooting and there were numerous other people who had been in the house. Upon entering, the officers could immediately smell marijuana and observed on a television stand, in plain sight, a green leafy substance they suspected was marijuana. Officers remained at the residence to "freez[e] the scene" while a search warrant was obtained.

¶8 A search warrant was issued within a few hours authorizing a search for firearms and ammunition as well as for marijuana and packaging material. When the search was performed, police recovered a 9mm pistol, ammunition, substances suspected to be heroin, cocaine, and marijuana, and other drug paraphernalia. Gordon was charged with endangering safety by using a dangerous weapon as a party to a crime, and possession with intent to deliver both heroin and cocaine using a dangerous weapon.

¶9 While in jail on these charges, Gordon made several phone calls to his girlfriend and another woman with whom he has a child. A detective listening to the calls determined that Gordon was asking them to send a message to M.J.W. and K.M.S. not to come to court to testify. Gordon was subsequently charged with felony intimidation of a witness.

¶10 Gordon filed a motion to suppress the gun, arguing that the warrantless search of the house—the protective sweep—was unreasonable because Gordon was already out of the house and in custody. The trial court found that the protective sweep was reasonable under the circumstances. The court further noted that there were independent sources besides the marijuana found during the sweep that established probable cause for a warrant—in particular, the fact that they were investigating a shooting, and were seeking to find the gun used in that incident.

Moreover, there was testimony from one of the officers that the gun was not discovered until the warrant was executed, not during the protective sweep. Therefore, the trial court denied Gordon's motion to suppress.

¶11     This matter proceeded to a jury trial in August 2017.[2] Witnesses for the State with regard to the endangering safety charge included: a police officer who responded to the shooting call, recovered the shell casings, and observed K.M.S.'s wound and the damage to M.J.W.'s house; an officer involved in the search of Gordon's residence when the gun and identifying paperwork belonging to Gordon and his girlfriend were found; another officer involved in the investigation who testified that M.J.W. had identified Gordon as the shooter in a photo array; a firearms examiner from the Wisconsin State Crime Laboratory who had examined the gun found in the search and testified that it matched the spent casings found at the scene; the officer who had seen the Buick run a stop sign near M.J.W.'s residence just before receiving the call to respond to the shooting; and a cell phone analyst from the Milwaukee County District Attorney's office, who testified that cell tower data for Gordon's cell phone showed that the phone had moved between the vicinity of M.J.W.'s residence and the residence on North 24th Street around the time of the shooting.

¶12     For the witness intimidation charge, testimony was received from a detective who had interviewed Gordon, and then had subsequently listened to the recordings of the calls Gordon made from jail. In those calls, Gordon indicated that he wanted the recipient of the calls to pass on the message that he does not

---

[2] The drug charges that Gordon was initially charged with were dismissed just before the trial began.

want a certain person to come to the "party"; in one of the calls, Gordon spelled out the first name of M.J.W. using a code, and then provided M.J.W.'s cell phone number to the recipient of the call.

¶13    The jury found Gordon guilty on both the endangering safety charge and the witness intimidation charge. Gordon was sentenced to seven years for each charge, both bifurcated as four years of initial incarceration and three years of extended supervision, to be served consecutively. This appeal follows.

### DISCUSSION

*1. The trial court did not err in denying Gordon's motion to suppress.*

¶14    Gordon first argues that the trial court erred in denying his motion to suppress. In our review of a motion to suppress, we apply a two-step standard of review: (1) we first review the trial court's findings of fact and will uphold them unless they are clearly erroneous; and (2) we then "review the application of constitutional principles to those facts *de novo*." *State v. Eason*, 2001 WI 98, ¶9, 245 Wis. 2d 206, 629 N.W.2d 625.

¶15    The constitutional principles regarding searches and seizures are set forth in both the Fourth Amendment to the United States Constitution and article I, section 11 of the Wisconsin Constitution. *See State v. Secrist*, 224 Wis. 2d 201, 208, 589 N.W.2d 387 (1999). Indeed, search and seizure law in Wisconsin essentially "parallels" search and seizure law established by the United States Supreme Court. *Id.* at 208-09.

¶16    Searches performed without a warrant are presumed to be unconstitutional; however, exceptions have been established and recognized by both the United States Supreme Court and the Wisconsin Supreme Court. *State v.*

6

*Lee*, 2009 WI App 96, ¶¶6-7, 320 Wis. 2d 536, 771 N.W.2d 373. One such exception is the "protective sweep," which is "a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others." *State v. Sanders*, 2008 WI 85, ¶32, 311 Wis. 2d 257, 752 N.W.2d 713 (quoting *Maryland v. Buie*, 494 U.S. 325, 327 (1990)). Police officers are justified in performing a protective sweep when they possess "a reasonable belief based on specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warranted the officer[s] in believing that the area swept harbored an individual posing a danger to the officer[s] or others." *Id.*

¶17    Here, the trial court found that the protective sweep was reasonable under the circumstances. In the first place, officers had arrested Gordon as a result of their investigation of a shooting incident. Furthermore, M.J.W. had previously advised the police that Gordon was usually armed, and that he had threatened to shoot M.J.W. Additionally, although the police had Gordon in custody at the time they did the sweep, there were numerous other people in the house at the time they arrived who were being uncooperative, and the gun suspected of being used in the shooting incident had not yet been discovered. Based on those facts, it was reasonable for the officers to believe that there could be someone in the residence who still posed a danger, warranting the protective sweep. *See Sanders*, 311 Wis. 2d 257, ¶32. Therefore, the protective sweep was not unconstitutional.

¶18    As a result, Gordon's argument that the gun—which was discovered not during the sweep but during the subsequent execution of the search warrant—should be suppressed as a "poisoned fruit[] of an unlawful search," is inapposite. Nevertheless, even if we had concluded that the protective sweep was unconstitutional, suppression of the gun would not be necessary.

¶19    Searches where a warrant was obtained will "pass constitutional muster" as long as the warrant complies with three requirements:

> (1) prior authorization by a neutral, detached magistrate; (2) a demonstration upon oath or affirmation that there is probable cause to believe that evidence sought will aid in a particular conviction for a particular offense; and (3) a particularized description of the place to be searched and items to be seized.

*State v. Tate*, 2014 WI 89, ¶28, 357 Wis. 2d 172, 849 N.W.2d 798 (citation omitted).

¶20    Gordon's argument implies that the probable cause requirement was not met. In order for probable cause to be established, the information presented to the court issuing the warrant must contain "'sufficient facts to excite an honest belief in a reasonable mind that the objects sought are linked with the commission of a crime, and that they will be found in the place to be searched.'" *State v. Ward*, 2000 WI 3, ¶27, 231 Wis. 2d 723, 604 N.W.2d 517 (citations omitted). In making this determination, the court considers the "totality of the circumstances." *Id.*, ¶26 (citations omitted).

¶21    If we had determined that this was a case in which a search warrant "was issued based on both tainted and untainted evidence," we would review independently whether "'the untainted evidence was sufficient to support a finding of probable cause to issue the search warrant[.]'" *State v. Herrmann*, 2000 WI App 38, ¶21, 233 Wis. 2d 135, 608 N.W.2d 406 (citation and brackets omitted). Here, the objects of the search warrant were firearms and ammunition—based on the shooting incident—and marijuana—based on the officers' observations during the protective sweep. The police already suspected that Gordon was involved in the shooting incident before they arrived at the residence on the day of the search.

Thus, that "untainted" evidence provides a sufficient basis for finding probable cause to issue the warrant from an independent source. *See* ***State v. Carroll***, 2010 WI 8, ¶44, 322 Wis. 2d 299, 778 N.W.2d 1. As a result, exclusion of the evidence is not required under either analysis. *See id.*

    *2. The evidence is sufficient to support Gordon's convictions.*

¶22    Gordon next argues that the evidence was not sufficient to support his conviction for witness intimidation. He contends that the evidence presented by the State was circumstantial and "scant at best." He further argues that the State's evidence relating to this charge—primarily the testimony of the police officer who listened to the recordings of Gordon's phone calls from jail—was not corroborated by anyone, particularly M.J.W. and K.M.S., which he asserts was a violation of his right to confrontation.

¶23    "When a defendant challenges a verdict based on sufficiency of the evidence, we give deference to the jury's determination and view the evidence in the light most favorable to the State." ***State v. Long***, 2009 WI 36, ¶19, 317 Wis. 2d 92, 765 N.W.2d 557. This court will not reverse a conviction "unless the evidence, viewed most favorably to the [S]tate and the conviction, is so insufficient in probative value and force that it can be said as a matter of law that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt." ***State v. Poellinger***, 153 Wis. 2d 493, 501, 451 N.W.2d 752 (1990). Furthermore, in our review we must "accept and follow" any inference drawn by the jury "unless the evidence on which that inference is based is incredible as a matter of law." *Id.* at 507. In other words, as long as "any possibility exists" that the jury could have drawn "appropriate inferences" from the evidence presented at trial, we may not overturn the verdict. *Id.*

¶24    The evidence that the jury heard regarding the witness intimidation charge came primarily from an officer who had interviewed Gordon and subsequently listened to the recordings of his jail calls.  The officer testified that Gordon had spelled out M.J.W.'s first name by spelling it out in a code, provided M.J.W.'s cell phone number, and asked the person he called to pass on the message that he does not want a certain person to come to the "party."  From that, the jury made a reasonable inference that Gordon was asking the person he called to dissuade M.J.W. from testifying against him.  *See id.*

¶25    Nevertheless, Gordon asserts that because M.J.W. did not testify, his right to confrontation was violated.  The right of an accused to confront the witnesses against him or her, set forth in the Sixth Amendment of the United States Constitution and known as the Confrontation Clause, is "a fundamental right" that is guaranteed by the Wisconsin Constitution as well.  *State v. Griep*, 2015 WI 40, ¶18, 361 Wis. 2d 657, 863 N.W.2d 567; *State v. Hale*, 2005 WI 7, ¶43, 277 Wis. 2d 593, 691 N.W.2d 637.

¶26    However, neither M.J.W. nor K.M.S. testified.  Gordon misstates the Confrontation Clause as a right to confront his accusers, rather than witnesses against him.  There is no law that requires victims to testify.  The right to confrontation is simply not applicable in this case.

¶27    Additionally, Gordon expands his insufficient evidence argument to his conviction on the endangering safety charge as well.  He cites the failure of the police to investigate another individual who was at the residence at the time of the search; Gordon's mother testified that this individual had previously been in her home with narcotics and firearms, and had also driven the Buick.

¶28    Notwithstanding that testimony, the jury also heard evidence from the police officers who conducted the search and found the gun in the house where Gordon was arrested, along with paperwork belonging to him; testimony that M.J.W. had identified Gordon as the shooter in a photo array; evidence that the gun found at the residence during the search was the gun that shot at M.J.W.'s residence; and evidence that the Buick and Gordon's cell phone were both in the vicinity of M.J.W.'s residence at the time of the shooting.  In other words, the jury heard testimony regarding another person who had a gun and access to the Buick and rejected it in light of all of the evidence against Gordon.

¶29    We conclude that the jury drew appropriate inferences from the evidence, and we therefore will not overturn the verdicts.  *See **Poellinger***, 153 Wis. 2d at 507.  Accordingly, we affirm.

*By the Court.*—Judgments affirmed.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)(5).

11