COURT OF APPEALS
DECISION
DATED AND FILED

October 26, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP1486-CR**

Cir. Ct. No. **2017CM1277**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

JESSE ROGALLA,

DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Marathon County: GREGORY B. HUBER, Judge. *Affirmed*.

¶1 HRUZ, J.[1] Jesse Rogalla appeals a judgment convicting him of disorderly conduct, as an act of domestic abuse. Rogalla argues that the circuit court erred by denying his motion to suppress evidence obtained after police

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

entered his home without a warrant.[2] The court concluded that the police entry was permissible under the exigent circumstances exception to the warrant requirement because "there was a very real and significant threat to the physical safety" of a woman within Rogalla's home. We agree and therefore affirm.

## BACKGROUND

¶2 At the suppression hearing, Officer Mitchell Klieforth testified that shortly after 9:00 p.m. on a July evening in 2017, he was dispatched to a residence after a person reported hearing a male yelling at a female inside it. Klieforth arrived at the residence within a few minutes, and as he approached to within fifteen to twenty feet of the home, he could hear a male, whom he later identified as Rogalla, arguing with a female. In particular, Klieforth testified that Rogalla and the female were arguing about a phone log, that Rogalla was agitated, and "[i]t was almost like a rage when he yelled at her." Klieforth heard both Rogalla and the female cursing.

¶3 Klieforth testified that once he moved closer to the residence, he could see Rogalla and the female through a small unshaded part of a window. She appeared to be kneeling down as Rogalla stood over her. Klieforth testified that he heard Rogalla "screaming over her when—she began crying. She was saying, 'You don't have to do this.' She was asking him, 'Why?' And I heard him say, 'Wrong answer,' and I heard a loud slap." Klieforth testified that he believed Rogalla had hit the female, and as a result, Klieforth feared for her safety.

---

[2] The Honorable Gregory Grau presided over the suppression hearing and issued an oral decision on Rogalla's motion. The Honorable Gregory B. Huber later accepted Rogalla's plea and sentenced him.

¶4    Klieforth testified that the female continued screaming after the slap, and he felt he needed to go inside to make sure that she was okay. After notifying dispatch that he intended to enter the residence, Klieforth entered through an unlocked side door of the garage without knocking or announcing his presence. Roughly three minutes had passed between Klieforth's arrival and when he entered the home. Klieforth then proceeded to walk the entire length of the home, with his firearm drawn, toward the bedroom where Rogalla and the female were arguing. Klieforth continued hearing the female scream. He could tell that she was using words, but he could not understand what she was saying. Klieforth encountered Rogalla in the threshold of the bedroom as Rogalla was leaving the room. Klieforth then proceeded to detain Rogalla.

¶5    Based on Klieforth's testimony, the circuit court concluded that Klieforth reasonably and lawfully entered the residence without a warrant because an exigent circumstance existed. The court explained that warrantless entry is constitutionally permissible when there is "a threat to safety of a suspect or others." The court further explained:

> [G]iven the state of mind of the defendant that the officer testified to, that being that the defendant was approaching the state of rage, and considering the fact that the officer testified that he heard a loud slap so that the matter had escalated to the point of physical violence, and the fact that things appeared to be escalating, based upon this perception of rage and physical violence, that a reasonable officer could very well perceive at that moment that there was a very real and significant threat to the physical safety of the woman that was slapped under these circumstances.
>
> And given that rage and the physical violence and the escalating nature of the situation, I do find that there was an exigent circumstance. There was an appropriate concern for the safety of the woman who had been slapped so that the officer lawfully entered the premises.

The court therefore denied Rogalla's motion to suppress evidence obtained after Klieforth's warrantless entry.[3]  Rogalla subsequently pled no contest to disorderly conduct, as an act of domestic abuse, and he was sentenced to pay court costs.  He now appeals.[4]

## DISCUSSION

¶6     A circuit court's decision to deny a motion to suppress evidence presents a question of constitutional fact that we review under a two-step standard of review.  ***State v. Tullberg***, 2014 WI 134, ¶27, 359 Wis. 2d 421, 857 N.W.2d 120.  First, we uphold the circuit court's findings of historical fact unless they are clearly erroneous.  ***Id.***  Then, we independently apply constitutional principles to those facts.  ***Id.***

¶7     Both the Fourth Amendment to the United States Constitution and article I, section 11 of the Wisconsin Constitution guarantee the right to be secure against unreasonable searches and seizures.  ***State v. Dearborn***, 2010 WI 84, ¶14, 327 Wis. 2d 252, 786 N.W.2d 97.  A warrantless entry of a home is presumptively unreasonable, and it "is the chief evil against which the wording of the Fourth Amendment is directed."  ***State v. Richter***, 2000 WI 58, ¶28, 235 Wis. 2d 524, 612 N.W.2d 29 (citation omitted).  The Fourth Amendment, however, does not bar warrantless entries when certain exigent circumstances exist.  ***Richter***, 235 Wis. 2d 524, ¶¶28-29.  As relevant to this appeal, exigent circumstances may exist

---

[3] The circuit court granted Rogalla's motion to suppress statements that he made while in custody and without a ***Miranda*** warning.  *See* ***Miranda v. Arizona***, 384 U.S. 436, 478-79 (1966). The court's decision in that regard is not at issue in this appeal.

[4] An order denying a motion to suppress evidence may be reviewed on appeal notwithstanding the defendant's guilty or no-contest plea.  WIS. STAT. § 971.31(10).

when there is "a threat to the safety of the suspect or others." ***State v. Robinson***, 2010 WI 80, ¶30, 327 Wis. 2d 302, 786 N.W.2d 463. The State bears the burden of proving the existence of exigent circumstances by clear and convincing evidence. ***State v. Hay***, 2020 WI App 35, ¶11, 392 Wis. 2d 845, 946 N.W.2d 190.

¶8 As a threshold matter, Rogalla argues that the circuit court failed to apply the proper legal standard for determining whether exigent circumstances existed because it only concluded that a reasonable officer could believe that there was "a very real and significant threat to the physical safety of the woman." He contends that the correct standard requires a reasonable belief that the delay in obtaining a warrant will "gravely endanger life." Rogalla further argues that the facts here do not satisfy that standard because: (1) yelling and swearing do not indicate life is gravely endangered; (2) a slap does not rise to the level of gravely endangering life; (3) the officer did not hear a cry for help; and (4) the parties continued arguing with words, which suggests that neither party was incapacitated.

¶9 The State responds that it need not prove that a delay would gravely endanger life per se. It acknowledges that the "gravely endanger life" language appears in some cases, but it argues that the actual standard, in application, is "whether there is a threat to physical safety." The State further argues that exigent circumstances existed because Klieforth reasonably believed that entry into the home was necessary to protect the physical safety of the female inside it.

¶10 Ultimately, we agree with Rogalla as to the language of the proper legal standard as stated in applicable case law. In particular, when deciding whether exigent circumstances exist due to a threat to the physical safety of others, we apply an objective test, determining "[w]hether a police officer under the circumstances known to the officer at the time [of entry] reasonably believes that

delay in procuring a warrant would gravely endanger life." *Richter*, 235 Wis. 2d 524, ¶¶29-30 (alteration in original) (citation omitted).

¶11     Nonetheless, we disagree with Rogalla's application of the standard to the facts of this case, given the analyses made in some of the same cases that he cites. As with most legal standards, how courts actually apply the stated standard to the facts of particular cases provides a clearer understanding of its effective meaning.

¶12     For example, and most notably, our supreme court considered and applied the "gravely endanger life" test in *Richter*. *See id.*, ¶¶37-43. In that case, a sheriff's deputy responded to a "burglary in progress" and learned that the suspect had fled and broken into a neighboring trailer home with sleeping people inside. *Id.*, ¶1. After observing signs of forced entry and then awaking some of the trailer's occupants, the deputy entered the trailer, and woke up the owner. *Id.* Only after the deputy's initial entry had already occurred did the deputy request and receive permission from the trailer's owner to search it for the suspect, during which the deputy found marijuana. *Id.* The owner was charged with several marijuana offenses, and he sought to suppress evidence obtained after the deputy's warrantless entry. *Id.*, ¶2.

¶13     In considering whether exigent circumstances existed under the objective test for justifying a warrantless entry into a home, the court concluded that the deputy "reasonably believed that the intruder … posed a threat to the safety of the occupants [in the] trailer." *Id.*, ¶41. The court explained:

> There were obvious signs of forced entry at [the] trailer—
> an open window (in 40-degree weather), and the knocked
> out screen lying on the ground. It was reasonable to infer
> from this that the suspect did not belong there but in fact
> had broken in, just as he did at the [neighbors']. There

> were people sleeping inside [the] trailer at the time the intruder entered, creating a situation fraught with potential for physical harm if something was not immediately done to apprehend the suspect.

*Id.* The court also rejected the notion that police must have affirmative evidence of weapons or violent tendencies of the individuals involved in order to satisfy the relevant legal standard. *Id.*, ¶40.

¶14 Our supreme court also applied the "gravely endanger life" test in *State v. Subdiaz-Osorio*, 2014 WI 87, 357 Wis. 2d 41, 849 N.W.2d 748. In that case, police tracked the defendant's cell phone location without a warrant after he fatally stabbed his brother and was in the process of fleeing to Mexico. *Id.*, ¶¶3, 78. The court recognized that police do not need "conclusive proof that a suspect is likely to harm someone in order to satisfy the exigent circumstances exception." *Id.*, ¶77. The court concluded that police "could reasonably believe that the delay in getting a warrant would seriously endanger life" because the defendant had fatally stabbed someone, he may have been armed with the murder weapon, and he was attempting to avoid apprehension.[5] *Id.*, ¶78. Under such circumstances, the court determined that officers could reasonably infer that the defendant might become violent when confronted. *Id.* Three justices ultimately disagreed that exigent circumstances existed due to a threat to safety, concluding that no immediate threat to safety existed because police "had no way of knowing" whether the defendant might become violent or how desperate he might become to

---

[5] Although *Subdiaz-Osorio* was a plurality opinion, four justices agreed that exigent circumstances existed. *See State v. Subdiaz-Osorio*, 2014 WI 87, ¶10 n.4, 357 Wis. 2d 41, 849 N.W.2d 748.

7

avoid apprehension. *Id.*, ¶¶176, 182-83 (Abrahamson, J., dissenting) (citation omitted).

¶15   Finally, in *State v. Lee*, 2009 WI App 96, 320 Wis. 2d 536, 771 N.W.2d 373, we applied the "gravely endanger life" test and determined that police were justified in conducting a "protective sweep" of an apartment after the officers observed suspected drugs and drug paraphernalia through the apartment's open door, and after the officers announced their presence and no one responded. *Id.*, ¶¶2-3, 20.   Under the circumstances, the officers could reasonably believe, among other things, that: (1) someone was likely inside; (2) the occupant was aware of the officers and their investigation; (3) the occupant might try to avoid apprehension; and (4) the occupant might be dangerous based on the apparent drug activity.   *Id.*, ¶¶14-15.   We recognized that the officers "may have found themselves in grave danger" if they did not perform the protective sweep and instead waited at the door while a warrant was obtained. *Id.*, ¶16.   Thus, an officer "could reasonably believe that a delay in procuring a search warrant would gravely endanger life …." *Id.*, ¶20.

¶16   Applying this objective test to the circumstances here, we agree with the circuit court that exigent circumstances existed for Klieforth to enter the home without a warrant.   Although the court did not expressly conclude that an officer could reasonably believe that a delay in procuring a warrant would gravely endanger life, the facts nonetheless support that conclusion, particularly given how that standard has been applied in other cases.   Klieforth had independent, personal knowledge of the ongoing argument inside the home and heard an aggravated, verbal dispute escalate into what he believed to be physical violence.   Klieforth heard Rogalla swearing at the female, and Rogalla sounded like he was in a rage. Klieforth could also see the female in a vulnerable position as Rogalla stood over

her; he heard her crying and telling Rogalla, "You don't have to do this"; he heard Rogalla say, "Wrong answer," before hearing a loud slap; and he heard the female "continuously screaming" after the slap. At the time Klieforth entered the home, which was roughly three minutes after he arrived on the scene, nothing suggested that the argument might cease, and an officer in Klieforth's position could reasonably believe that immediate action was necessary to prevent serious harm to the female.

¶17 Rogalla places too much weight on the fact that the female did not call for help and was not incapacitated. Those circumstances may certainly support a reasonable belief that immediate action is necessary, but the lack of those circumstances is not dispositive. Again, Klieforth heard the female crying and saying, "You don't have to do this," and asking, "Why?" An officer could reasonably infer that the female was in distress. Klieforth was not required to wait until the female was actually incapacitated or severely hurt before entering; she had just been loudly slapped. The objective test only requires a reasonable belief that a delay in procuring a warrant would gravely endanger life, *see Richter*, 235 Wis. 2d 524, ¶30; it does not require life-or-death circumstances. *Cf. State v. Boggess*, 115 Wis. 2d 443, 458, 340 N.W.2d 516 (1983) (recognizing that life-or-death circumstances are not needed under the "emergency rule" exception—an exception that has been equated with the exigent circumstances exception at issue here).

¶18 Indeed, in *Richter*, the deputy did not observe any active or ongoing violence before entering the trailer. *See Richter*, 235 Wis. 2d 524, ¶41. Yet, the court concluded that the objective test was satisfied because the combination of a burglar's entry and sleeping people inside the trailer created a situation "fraught with potential for physical harm if something was not immediately done …." *Id.*

9

Similarly, an officer could reasonably believe in this case that immediate action was necessary because the female was crying and screaming, and the argument was escalating and had turned physical.[6]

¶19    The circumstances in this case are similar to those in ***Brigham City v. Stuart***, 547 U.S. 398 (2006).  In that case, police officers responded to a report of a loud party.  *Id.* at 400-01.  Upon arriving, the officers observed through windows and a screen door that four adults were attempting to restrain a juvenile in the home.  *Id.* at 401.  The juvenile eventually broke free and punched one of the adults.  *Id.*  While the adults struggled to subdue the juvenile, officers entered the home and ended the altercation.  *Id.*  Several people were subsequently charged with disorderly conduct, among other offenses, and they sought to suppress evidence obtained after the officers' warrantless entry.  *Id.*  On appeal, the Supreme Court recognized that exigent circumstances may exist when there is a "need to assist persons who are seriously injured or threatened with such injury." *Id.* at 403.    The Court subsequently concluded that the officers' entry was reasonable:

> In these circumstances, the officers had an objectively reasonable basis for believing both that the injured adult might need help and that the violence in the kitchen was just beginning. Nothing in the Fourth Amendment required them to wait until another blow rendered someone "unconscious" or "semi-conscious" or worse before entering. The role of a peace officer includes preventing violence and restoring order, not simply rendering first aid to casualties; an officer is not like a boxing (or hockey) referee, poised to stop a bout only if it becomes too one-sided.

---

[6] Because an immediate threat of violence existed and Klieforth personally knew of that threat, the imminence concerns expressed by the dissent in ***Subdiaz-Osorio*** are not present here. *See **Subdiaz-Osorio***, 357 Wis. 2d 41, ¶182 (Abrahamson, J., dissenting).

*Id.* at 406. We find this analysis compelling and applicable here.

¶20 Like the officers in ***Brigham City***, Klieforth heard and observed what he believed to be an ongoing and escalating altercation. He also had an objectively reasonable basis to believe that the female might need help after being slapped and that the physical violence was just beginning. Under such circumstances, an officer could reasonably believe that a delay in procuring a warrant might result in serious and significant injury to the female in the interim. Klieforth was not required to wait until the female was incapacitated or close to being incapacitated before entering. *See **id.***

¶21 Rogalla argues that ***State v. Durham***, No. 2015AP1978-CR, unpublished slip op. (WI App June 1, 2016), is instructive.[7] In that case, police officers were dispatched to "a possible domestic incident" and were told that a neighbor had reported hearing "yelling and banging" from a residence. ***Id.***, ¶3. Upon arriving, the officers did not see or hear anything to corroborate the report, and no one responded to their knocks on the door or ringing of the doorbell. ***Id.***, ¶¶4-5. The officers nonetheless proceeded inside the residence. ***Id.***, ¶¶5-6. We concluded that exigent circumstances did not exist under those circumstances because "a reasonable officer could not conclude anyone inside the residence was in grave danger or that delay in procuring a warrant would cause such danger." ***Id.***, ¶¶45-46.

---

[7] An authored, unpublished opinion by a single judge under WIS. STAT. § 752.31(2) may be cited for its persuasive value if the opinion was issued on or after July 1, 2009. *See* WIS. STAT. RULE 809.23(3)(b).

¶22    The circumstances in *Durham* differ dramatically from those in this case.  In *Durham*, the officers could not see or hear anything that corroborated the previous report of yelling and banging.  *Id.*, ¶45.  Here, as explained above, Klieforth heard Rogalla yelling and cursing.  He also heard a loud slap and saw Rogalla standing over the female.  Klieforth believed that Rogalla had physically hit the female.  Klieforth heard the female continue to scream after the slap.  Therefore, unlike the officers in *Durham*, Klieforth had an independent and reasonable basis to believe that a person inside the residence was in grave danger.

¶23    Rogalla next argues that the State has not met its burden because it failed to provide evidence that obtaining a warrant would have been burdensome or caused an unreasonable delay.  We disagree that the State failed to meet its burden.  Although Klieforth did not expressly testify to the length of time needed to obtain a warrant, his testimony provided a strong and obvious inference that a warrant could not be obtained without the delay in acquiring one seriously endangering the female inside.  Klieforth's testimony demonstrated, as the circuit court found, that "the matter had escalated to the point of physical violence, and … things appeared to be escalating."  Rogalla does not challenge these findings on appeal, nor are they clearly erroneous based on Klieforth's testimony.  "Even under optimal circumstances, it would have taken several minutes to contact a judge, relate the facts, and obtain a telephonic warrant."  *State v. Leutenegger*, 2004 WI App 127, ¶31, 275 Wis. 2d 512, 685 N.W.2d 536.  Under these circumstances, an officer, having firsthand knowledge of an ongoing argument turning physical and escalating, could reasonably believe that immediate action was necessary and that delay in procuring a warrant would gravely endanger life.  *See id.*

12

¶24    Finally, Rogalla contends that Klieforth could have taken other reasonable measures aside from obtaining a warrant, such as knocking on the door, loudly announcing his presence, calling out to ask if anyone needed help, or waiting for an additional officer to arrive.  Contrary to Rogalla's arguments, Klieforth testified that those alternatives were unreasonable under the circumstances.  He testified that he did not knock or announce his presence because he thought it would be a tactical disadvantage.  He also explained that he did not know if there were any weapons in the bedroom or if more harm would come to the female by announcing his presence.  Rogalla has not provided any explanation or basis for us to conclude that Klieforth's concerns in this regard were not reasonable.

¶25    In sum, a police officer in Klieforth's position could have reasonably believed that a delay in procuring a warrant would gravely endanger the female, who appeared to have just been slapped.  Thus, Klieforth's warrantless entry into the home was justified by exigent circumstances.

*By the Court.*—Judgment affirmed.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)4.